Eli Z. Freedberg, Esq.
LAW OFFICE OF ELI FREEDBERG, P.C.
370 Lexington Avenue, Suite 2103
New York, NY 10017
(347) 651-0044
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDRU SURDU, DINO TITO, ANASTASIA MAYFAT, CIPRIAN GROSU, and LUIS LOPEZ, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>MADISON GLOBAL LLC, d/b/a NELLO, NELLO BALAN, and THOMAS MAKKOS,<br><br>Defendants. | **CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Requested** |

ALEXANDRU SURDU, DINO TITO, ANASTASIA MAYFAT, CIPRIAN GROSU, and LUIS LOPEZ, ("Plaintiffs"), on their own behalf and on behalf of others similarly situated, by their attorneys, the Law Office of Eli Freedberg, P.C., allege as follows:

## NATURE OF THE CASE

1. This is a collective action brought by Plaintiffs on their own behalf and on behalf of a proposed collective identified below. Plaintiffs, and the proposed collective, were or are employed as food service workers (i.e., servers, bussers, runners, and bartenders) by Madison Global, LLC d/b/a Nello ("Nello") and other entities related to Nello, Nello Balan ("Balan"), and Thomas Makkos ("Makkos") (Nello, Balan, and Makkos collectively referred to as "Defendants."

2. This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and the New York Labor Law § 190 *et seq.* ("NYLL") to recover unpaid minimum

1

wages, unlawfully misappropriated tips, uniform purchase and maintenance costs, and other monies.

3. For at least six years prior to the filing of this Complaint – the statute of limitations pursuant to the NYLL – continuing to the present, Defendants have failed to compensate their food service workers at the federal and state minimum wage, unlawfully misappropriated a portion of their tips, and forced the food service workers to pay for the costs of purchasing and maintaining their required uniforms.

4. Plaintiffs seek injunctive and declaratory relief against Defendants' unlawful actions, return of the tip credit (i.e. the difference between the full applicable minimum wage and the hourly wage Defendants actually paid to their food service workers), return of the misappropriated tips, return of unpaid wages, liquidated damages, interest, and attorneys' fees and costs as permitted in accordance with the FLSA and NYLL.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. §§ 1332 and 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1331, as the location of Nello, the restaurant where Plaintiff worked, is in the Southern District of New York.

## PARTIES

7. Plaintiff Surdu currently resides in Long Island, New York and first worked for Defendants as a waiter for several weeks in 2010. Surdu then returned to work for Defendants for several weeks in 2011. Surdu then returned to work at Nello restaurant in November of 2013 and is currently employed.

8. Plaintiff Tito currently resides in Queens, New York and was employed by Defendants as a busser, dessert waiter, and waiter from 2003 through the present.

9. Plaintiff Grosu currently resides in Long Island, New York and was employed by Defendants as a waiter from approximately 2012 through October of 2014.

10. Plaintiff Mayfat currently resides in Manhattan, New York and was employed by Defendants as a server/bartender from approximately 2009 through 2015.

11. Plaintiff Lopez resides in Jackson Heights, New York and was employed by Defendants as a busser from July of 2014 through July of 2015.

12. Plaintiffs were Defendants' employees within the meaning of the FLSA and NYLL.

13. Defendant Madison Global LLC is a New York limited liability company that owns and operates (or has owned and operated) Nello, a restaurant located at 696 Madison Avenue, New York, New York.

14. At all times material to this action, Defendant Balan was an active manager of Plaintiff and the FLSA collective. Indeed until around January of 2009, Defendant Balan was owner of Nello. Even after Balan sold his interest in the restaurant he has retained authority regarding the pay practices and employment policies at Nello.

15. Since approximately January of 2009, Defendant Makkos has been an owner of Nello, and has been an active manager with authority to control the pay practices and employment policies at Nello.

## COLLECTIVE ACTION ALLEGATIONS

16. Plaintiffs brings their FLSA claims on behalf of themselves and similarly situated employees (i.e., waiters, bussers, who are have been employed by Defendants in the three years preceding the filing of this Action.

17. The members of the FLSA collective have been victims of Defendants' common policies and practices which have denied Plaintiff and the collective of the full minimum wage and earned tips.

18. The FLSA Collective consists of waiters, runners, bussers, and bartenders who during their employment at Nello, fell into the category of "tipped employees," who customarily earned more than $30.00 per month in tips and were required by Nello to participate in a tip-pooling system whereby all of Nello's guests' tips were aggregated and shared pursuant to a formula described herein.

19. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA collective by engaging in a pattern, practice and policy of violating the FLSA. This pattern, practice and policy includes:

   a. Depriving food service workers of the tips they earned;

   b. Improperly taking a tip credit toward food service workers' wages;

   c. Redistributing portions of the tips earned by food service workers to managers, cashiers, and other individuals who were not entitled to tips pursuant to the FLSA and NYLL;

   d. Failing to make timely payments of wages;

e. Forcing employees to purchase their own required uniform and pay for the maintenance of the uniform; and,

f. Making unlawful deductions from wages.

20. Defendants have engaged in unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees' compensation by willfully and knowingly violating the FLSA.

21. In fact, Defendants have been subject to similar litigation on several occasions (*i.e. Oyerbide v. Balan*, Index number 09-cv-9940 and *Lopez v. Madison Global, LLC*, Index number 12-cv-3060)), yet they have not remedied any of the violations discussed herein.

22. Despite these lawsuits, Defendants have failed to take the necessary steps to comply with the FLSA and NYLL.

23. The FLSA collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join this action.

24. The identities of these similarly situated employees are or should be known to Defendants and are locatable through Defendants' business records.

## CLASS ACTION ALLEGATIONS

25. Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of all food service employees who are employed or who have been employed by Defendants within six years prior to the filing of this Complaint.

26. **Numerosity**: The potential number of persons in the Class is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The number of persons in the

Class is unknown to Plaintiffs at this time; however, it is estimated that the number exceeds 50 individuals.

27. **Commonality and Typicality**: The claims of Plaintiffs (for violations of the FLSA and NYLL based on their maintenance of an invalid tip pool and illegally paying Plaintiffs and the class a rate of below below the minimum wage) is typical of the claims of all of the other members of the Class because all of them sustained similar injuries and damages arising out of Defendants' common course of conduct in violation of law and the injuries and damages of all of the other members of the Class were caused by Defendants' wrongful conduct as described in this Complaint.

28. **Ascertainable Class**: The proposed Class is ascertainable in that its members can be identified and located using information contained in Defendants' payroll and personnel records.

29. **Adequacy**: Plaintiffs are adequate representatives of the Class; will fairly protect the interests of the other members of the Class; have no interests antagonistic to the members of the Class; and will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type. Class Counsel is competent and experienced in litigating large wage payment class actions.

30. **Superiority**: The nature of this action makes the use of the class action vehicle a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the other members of the Class for the wrongs alleged herein, as follows:

    a. This case involves a large corporate Defendant and a large number of individuals with many relatively small claims and common issues of law and fact

    b.    If each individual member of the Class was required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because, with its vastly superior financial and legal resources, it would be able to exploit and overwhelm the limited resources of each individual member of the Class;

    c.    Requiring each individual member of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by members of the Class who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of retaliation;

    d.    The Prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Class against Defendants; would establish potentially incompatible standards of conduct for Defendants, would result in legal determination with respect to individual members of the Class which would, as a practical matter, be dispositive of the interest of the other members of the Class who are not parties to the adjudications; and/or would substantially impair or impede the ability of the members of the Class to protect their own interests;

    e.    The claims of the individual members of the Class may not be sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses thereto;

    f.    Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expense and burden of individual

        litigation would make it difficult of impossible for individual member of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

    g.    The costs to the court system of adjudication of such individualized litigation would be substantial.

## FACTS

31. The FLSA and NYLL allow employers of "food service workers" to pay their tipped employees at a rate below the normal federal and state minimum wages by applying a tip credit towards certain eligible employees' wages.

32. The FLSA and the NYLL provide that in order to be eligible for this tip credit, employers of tipped employees must inform food service workers about their intention to apply the tip credit towards the employees' wages and also must allow employees to keep all of the tips that they receive.

33. Managers and other non-service employees are prohibited from sharing in the tips received by the "food service workers."

34. The FLSA and NYLL permit employees to participate in a tip pool where tipped employees combine all of their tips together and then redistribute them amongst themselves.

35. Prior to 2011, it was illegal for New York State employers to compel food service workers to pool their tips. In other words, prior to 2011, an involuntary tip pool violated the NYLL.

36. At all times relevant hereto, Defendants established and imposed an involuntary tip pool upon Nello's food service workers, and also required the food service workers to share a percentage of their tips with managers, cashiers and other non-tipped employees.

37. At all relevant times the tip pool at Nello was structured as follows:

a. 1.5 points allocated to the general manager;

b. 1.5 points allocated to the manager;

c. 1.25 points allocated to the cashiers;

d. 1 point allocated to each server;

e. .75 point allocated to the opening busser;

f. .5 point allocated to every other busser;

g. 1 point allocated to the food runner;

h. 1 point allocated to the desert waiter; and

i. 1 point allocated to the bartender.

38. By mandating the participation of the general manager, manager, and cashier in the tip pool, Defendants have violated both the FLSA and NYLL.

39. Both the general manager and manager have the authority hire, fire, schedule, evaluate employees, coordinate vacation and time-off schedules, coordinate call-outs for sick or other personal time, discipline, keep stock of inventory, and purchase supplies.

40. Upon information and belief, the general managers and managers are paid more than the sub- minimum wage Defendants paid to Plaintiff and the FLSA Collective.

41. The general manager and manager have little or very limited customer interaction and rarely if ever take orders from customers, seat customers, clear tables, or bring food to tables.

42. The general manager and manager have authority to provide guests with complimentary food and/or beverages, authority that is denied to Plaintiff and the FLSA Collective.

43. George Gutakolis, who was the general manager and who participated in the tip pool once suspended Plaintiff for one week because he had to look up a drink recipe instead of knowing how to make the cocktail by heart.

44. Mr. Gutakolis suspended other food service workers, including a waiter named Alvar.

45. The manager, Ion (John) Simion, was responsible for managing board of health investigations.

46. Mr. Simion is also primarily responsible for collecting resumes and screening applicants who want to apply to work at Defendants' restaurant.

47. Mr. Simion is also primarily responsible for purchasing supplies and for ensuring that Defendants' inventory of food and supplies is fully stocked.

48. Both Mr. Simion and Mr. Gutakolis had virtually no customer interaction at all.

49. David Donghui Shi is the full-time lunch cashier. At all times relevant to this action he has worked the lunch shift from Monday to Saturday and he often works the Saturday dinner shift as well.

50. There are other full-time dedicated cashiers.

51. The general manager, manager, and all full time dedicated cashiers are excluded from the definition of the FLSA collective.

52. The full time dedicated cashiers are stationed at either the cash registers or the POS Systems and are responsible for running credit cards through the restaurant's POS systems, making change, going to the bank, and dividing pooled tips into appropriate shares and running tip and sales reports at the end of their shifts.

53. Balan and Makkos allowed the cashiers to automatically add gratuities to the checks of guests who appeared "foreign." No food service worker had access to the POS system to modify guests' bills or to access the restaurant's sales reports.

54. The cashier never approached guests seated at tables and instead were handed cash or credit card payments from the waiters who collected the payment directly from the guests.

55. The general manager and manager are often granted shares of tips even on shifts that they did not work.

56. The cashiers, general manager and manager spend more than 2 hours and more than 20% of each shift performing non-tip producing activities, thereby making them ineligible to participate in a tip pool.

57. In addition, in recent months, Defendants have illegally mandated the inclusion of a person named Mauricio Ferrigno in the tip pool.

58. Mr. Ferrigno is a friend of the individual Defendants and while he occasionally visits the restaurant he has no formal role or job responsibilities at the restaurant and has no interaction with the restaurant's guests or customers.

59. Accordingly, Mr. Ferrigno is not eligible to receive a share of Plaintiffs' and the FLSA collective's tips.

60. Mr. Ferrigno received 1.5 points from the tip pool despite never interacting with the guests of the restaurant.

61. Mr. Ferrigno is not a waiter, does not take customers' orders, does not greet or seat customers, does not bus food, silverware, or glassware to or from tables and does not run food to tables.

62. Mr. Ferrigno simply spends most of his limited time at the restaurant talking on his phone and drinking coffee. As a result, Mr. Ferrigno is not eligible to receive a share of the Plaintiffs' and FLSA collective's tips.

63. In addition, the bussers, who are part of the FLSA collective often worked one or two shifts per week as an "opening busser."

64. The opening busser was required to arrive at Nello at 8:00 a.m., well before any guest arrived. During this time, the opening busser would sweep mop and vaccum floors, clean sidewalks, clean windows, set up tables and chairs, and polish glassware and silverware before any customer ever arrived to dine in the restaurant.

65. The restaurant opened to guests around 11:30 every morning yet the opening busser would spend these 2.5 hours every day performing maintenance, cleaning and polishing duties prior to the arrival of any guests.

66. By performing these non-tip producing duties for more than 2 hours per day, the opening busser no longer qualified as a food service worker under the NYLL and no longer qualified as a customarily tipped employee under the FLSA. As a result, Defendants were not permitted to apply the tip credit towards their wages but did so in violation of the FLSA and NYLL.

67. By these and other acts, Defendants have taken gratuities belonging to Plaintiff and the FLSA Collective and unlawfully diverted them to managerial and non-service staff who are not entitled to share in the tip pool at the restaurant, thereby preventing the food service workers from retaining all of the tips left for them in violation of the FLSA and NYLL.

68. Because Defendants established an illegal tip pooling scheme at Nello, they are not entitled to take advantage of the tip credit and reduce the minimum wages of Plaintiff and the

FLSA Collective by applying the tip credit allowance that is available under the FLSA and the NYLL.

69. Defendants are also prohibited from applying the tip credit because they failed to provide Plaintiff and the FLSA Collective with notice of the tip credit as required by both the NYLL and FLSA.

70. Defendants required Plaintiffs and the FLSA collective and other food service workers to wear a navy blue sports jacket, white shirt, navy blue tie, and gray dress slacks. All of the clothing items required dry cleaning and were expensive to maintain yet Defendants required Plaintiff and the FLSA Collective to purchase these uniforms and to maintaining these uniforms.

71. Defendants were required to provide these uniforms to Plaintiff's and the FLSA Collective but instead made Plaintiff and the FLSA Collective bear the cost of purchasing these clothing items.

72. Defendants were required to launder or pay for the maintenance of these uniforms but instead made Plaintiff and the FLSA Collective bear the cost of laundering and maintaining these clothing items.

73. Defendants reduced Plaintiff's tips by several percentage points to ostensibly pay for a credit card processing fee; however, upon information belief, Defendants reduced Plaintiff's and the FLSA Collective's tips by more than they actually paid to the credit card companies.

74. On occasion, Defendants failed to pay Plaintiff and the FLSA Collective's wages or were several weeks late in making the wage payments.

### FIRST CAUSE OF ACTION
### FLSA – Unpaid Minimum Wages

75. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 74 above as if specifically set forth herein.

76. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

77. Defendants were required to pay Plaintiff and the FLSA Collective the applicable federal minimum wage rate.

78. Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because, *inter alia*,

j. Defendants were required to but failed to inform Plaintiffs and the FLSA Collective of the provisions of 29 U.S.C. § 203(m);

k. Defendants unlawfully distributed portions of the tips received by Plaintiff and the FLSA Collective to employees in positions that do not customarily and regularly receive tips, in violation of the FLSA and its supporting regulations; and,

l. Defendants illegally made impermissible deductions in the amount of tips given to Plaintiff and the FLSA Collective.

79. Defendants were aware of should have been aware that the practice described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective.

80. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective suffered damages to be determined at trial and are entitled to the recovery of such amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other damages pursuant to the FLSA.

## SECOND CAUSE OF ACTION
### FLSA – Unpaid Minimum Wages

81. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 81 above as if specifically set forth herein.

82. Defendants are employers within the meaning NYLL §§ 190, 651(5), 652 and the supporting New York State Department of Labor regulations, and employed Plaintiffs.

83. Defendants were required to pay Plaintiffs the applicable minimum wage rate under the NULL.

84. Defendants were not eligible to avail themselves of the tipped minimum wage rate under the NYLL because, *inter alia*,

m. Defendants were required to but failed to provide the required tip credit notice under the NYLL;

n. Defendants unlawfully distributed portions of the tips received by Plaintiffs and the FLSA Collective to employees in positions that do not customarily and regularly receive tips, in violation of the FLSA and its supporting regulations; and,

o. Defendants illegally made impermissible deductions in the amount of tips given to Plaintiff and the FLSA Collective.

85. Defendants were aware of should have been aware that the practice described in this Complaint were unlawful and did not make a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs.

86. As a result of Defendants' willful violations of the NYLL, Plaintiffs suffered damages to be determined at trial and are entitled to the recovery of such amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other damages pursuant to the NYLL.

### THIRD CAUSE OF ACTION
### NYLL – Unlawful Tip Deductions

87. Plaintiffs repeats and reallege the allegations contained in Paragraphs 1 through 86 above as if specifically set forth herein.

15

88. NYLL § 196-d prohibits employers or their agents from demanding or accepting directly or indirectly any part of the gratuities received by an employee, or retaining any part of a gratuity or any charge purported to be a gratuity for an employee.

89. Defendants unlawfully retained tips from Plaintiffs and unlawfully redistributed their tips to non-tip eligible employees.

90. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment interest and post-judgment interest.

## FOURTH CAUSE OF ACTION
## NYLL – Uniform Expense

91. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 90 above as if specifically set forth herein

92. Defendants required Plaintiffs to wear a mandatory uniform at work consisting of a sports jacket, dress slacks, white shirt and tie.

93. These articles of clothing could not be washed in a washing machine and had to be dry cleaned.

94. Defendants required Plaintiffs to bear the cost of purchasing and maintaining the required uniforms in violation of 12 N.Y.C.R.R.§ 146-1.8.

95. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment interest and post-judgment interest.

## FIFTH CAUSE OF ACTION
## николай, Article 6, §§ 190 *et seq.* Notice and Wage Statements

96. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 95 as if set forth fully herein.

97. Defendants willfully failed to furnish Plaintiffs with a notice containing the rate of pay and the basis thereof, whether paid by the hours, shift, day, week, salary, piece, commission, or otherwise, the name of the employer, any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business and a mailing address if different, the telephone number of the employer, and anything else otherwise required by law.

98. Defendants also willfully failed to furnish Plaintiffs with every payment of wages, a wage statement that included the phone number of the employer, the proper overtime rate, and anything else otherwise required by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that judgment be granted awarding Plaintiffs:

(a) Compensatory damages;

(b) Liquidated damages;

(c) Prejudgment interest;

(d) Attorneys' fees and costs; and

(e) Such other legal and equitable relief as the Court deems necessary and proper.

Dated: August 11, 2015
New York, New York

                LAW OFFICE OF ELI FREEDBERG, P.C.

                By: _____
                Eli Z. Freedberg, Esq.
                efreedberg@ezf-law.com
                370 Lexington Avenue, Suite 2103
                New York, NY 10017
                (347) 651-0044