# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

ALEXANDRU    SURDU,    DINO    TITO,
ANASTASIA MAYFAT, CIPRIAN GROSU,
and LUIS LOPEZ, on behalf of themselves and
those similarly situated,

                                    Plaintiffs,

                    - against -

MADISON  GLOBAL  LLC,  d/b/a  NELLO,
NELLO BALAN, and THOMAS MAKKOS

                                    Defendants.

----------------------------------------------------------------X

Case No.: 15-cv-6567 (PGG)

## SETTLEMENT AGREEMENT AND RELEASE

        Plaintiffs Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis
Lopez ("Plaintiffs"), on behalf of themselves and the "Class Members" (as that term is
defined in Section 1.7 below) and Defendants Madison Global, LLC, d/b/a Nello
("Nello") and Thomas Makkos ("Makkos," together with Nello the "Defendants,"
collectively with Plaintiffs the "Parties"), through their respective counsel, hereby enter
into this Settlement and Release Agreement (the "Agreement") to resolve all claims
which were asserted or could have been asserted against Defendants by Plaintiffs and the
Class Members in the Litigation (as that term is defined in below).

## RECITALS

A.    WHEREAS, Plaintiffs filed a Class and Collective Action Complaint on August
      19, 2015 (the "Complaint") in the above-captioned action (the "Litigation")
      alleging that Plaintiffs and Class Members were not paid the applicable
      minimum wage;

B.    WHEREAS, the Complaint asserted class action claims under the New York
      Labor Law ("NYLL") and collective action claims under the Fair Labor Standards
      Act ("FLSA") and sought recovery of, among other things, unpaid minimum
      wages, liquidated damages, and attorneys' fees and costs;

C.    WHEREAS, ten (10) members of the putative collective have filed consents to
      join the Litigation;

1

D.  WHEREAS, the Parties participated in an all-day mediation on September 16, 2016 with the assistance of an experienced mediator, Ralph S. Berger, which mediation was successful;

E.  WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to Plaintiffs and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members; and,

F.  WHEREAS, Defendants have denied and continue to deny all of the allegations made by Plaintiffs, have denied and continue to deny that the Class Members, or any putative collective members, were not paid the applicable minimum wage under the NYLL, the FLSA, or any other statute, have denied and continue to deny that Defendants are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Complaint, and have denied and continue to deny that the claims asserted in the Complaint are appropriate for class or collective treatment, except for settlement purposes only;

G.  NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.  DEFINITIONS

1.1  **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.2  **Authorized Claimant.** "Authorized Claimant(s)" means a Class Member or the authorized legal representative of such Class Member, who timely and validly files a Claim Form and therefore is entitled to receive a Settlement Check.

1.3  **Application for Final Approval.** "Application for Final Approval" means documents and materials to be filed with the Court pursuant to Section 2.7, seeking approval of the settlement.

1.4  **Bar Date.** "Bar Date" means the date as set by the Court by which any Class Member who wishes to qualify as an Authorized Claimant must timely file a Claim Form pursuant to Section 2.4(D).

1.5  **Claim Form.** "Claim Form" means the form as approved by the Court, a copy of which is attached to the Notice of Proposed Settlement, that Class Members (other than the Named and Opt-In Plaintiffs) must sign and return by the Bar Date to become Authorized Claimants.

**1.6**     **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean The Klein Law Group, P.C.

**1.7**     **Class Members.** "Class Members" shall mean all individuals who worked as servers, runners, bussers and bartenders and who received tips at Nello from August 19, 2009 through the date of the Preliminary Approval Order as defined in Section 1.27 below, except for individuals meeting that definition who previously waived all claims against Nello under the Fair Labor Standards Act ("FLSA") and New York Labor Law through the prior actions having Southern District of New York ("SDNY") Case Numbers 09-CV-9940 and 12-CV-3060.

**1.8**     **FLSA Collective.** "FLSA Collective" shall consist of all Class Members who have already filed timely and valid consents to sue in the Litigation under the FLSA, or do so by participating in this settlement.

**1.9**     **Class List.** "Class List" means a list of all Class Members, identified by name and address, contained in a confidential document that Defendants shall provide to the Settlement Claims Administrator. The Class List is to be used by the Settlement Claims Administrator to assist in effectuating the settlement as set forth herein, and may not be used for any other purpose.

**1.10**    **Costs and Fees.** "Costs and Fees" means Plaintiffs' Counsels' attorneys' fees, costs, and expenses, accountant fees and costs, Settlement Claims Administrator's fees and costs, and Service Awards.

**1.11**    **Court.** "Court" shall mean the SDNY, before the Honorable Magistrate Judge Henry Pitman.

**1.12**    **Covered Period.** "Covered Period" shall mean the period from August 19, 2009 through the date of the Preliminary Approval Order as defined in Section 1.27 below.

**1.13**    **Days.** "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

**1.14**    **Defendants.** "Defendants" shall mean Nello and Makkos.

**1.15**    **Defendants' Counsel.** "Defendants' Counsel" means, Roger H. Briton, Esq., and Noel Tripp, Esq., of Jackson Lewis, P.C., 58 S. Service Road, Suite 250, Melville, NY 11747.

**1.16**    **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.17**    **Fee Award.** "Fee Award" is defined in Section 3.3(A) below.

**1.18**    **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

**1.19**   **Final Approval Order.**  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Costs and Fees, and dismissing the Litigation with prejudice.

**1.20**   **Final Effective Date.**  Provided no appeal of the Final Approval Order is timely filed, the "Final Effective Date" means thirty (30) days after the Court has entered a Final Approval Order approving this Agreement as provided in Section 2.8.  If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed or, if granted, has resulted in affirmance of the Final Approval Order in a form entered by the Court.

**1.21**   **Gross Settlement Fund.**  "Gross Settlement Fund" refers to Three Hundred Forty-Two Thousand Five Hundred Dollars and No Cents ($342,500.00), the maximum amount Nello has agreed to pay, exclusive of Employer Payroll Taxes.

**1.22**   **Named and Opt-in Plaintiffs.**  "Named Plaintiffs" refers to Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis Lopez.  "Opt-in Plaintiffs" refers to the following ten (10) individuals, who filed consents to join the Litigation pursuant to 29 U.S.C. § 216(b) prior to the Parties' mediation on September 16, 2016: Constantine Haralabopoulus, Bilguun Ganhuyag, Francesco Desideri, Gian Maria Montoro, Stefano Naia, Adnan Dibra, Sussana De Martino, (estate of) Luca Federico, Juan Carlos Rios, Gulnaz Badakshanova.

**1.23**   **Net Settlement Amount.**  "Net Settlement Amount" means the amounts paid to Authorized Claimants, and Costs and Fees.  "Net Settlement Fund" means the Gross Settlement Fund minus the maximum attorneys' fees, costs and expenses payment of $114,166.66, and all other Costs and Fees besides attorneys' fees.

**1.24**   **Notice or Notices.**  "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order.

**1.25**   **Objector.**  "Objector" means an individual who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.26**   **Opt-out Statement.**  "Opt-out Statement" is a written, signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

**1.27**   **Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court: (i) certifying the Class pursuant to F.R.C.P. 23 solely for purposes of

effectuating the Agreement; (ii) conditionally certifying the FLSA Collective pursuant to 29 U.S.C. § 216(b) solely for the purposes of effectuating the Agreement; (iii) preliminarily approving the terms and conditions of this Agreement; (iv) appointing Class Counsel as defined above; (v) directing the manner and timing of providing Notice to the Class Members; and (vi) setting dates to effectuate the terms of this Agreement, including the Bar Date and the date of the Fairness Hearing.

**1.28**    **Released Class Claims.** "Released Class Claims" means all wage and hour claims specifically related to employment of Class Members with Defendants that were or could have been asserted under federal or state law by or on behalf of Class Members, excluding Class Members who opt-out of the settlement, for the period August 19, 2009, through the date of the Preliminary Approval Order. The Released Class Claims include all claims specifically related to employment of Class Members and members of the FLSA Collective under federal and state law, including but not limited to claims for unpaid regular or overtime wages, spread-of-hours, failure to provide proper wage notices and/or statements, unlawful tip deductions, unpaid uniform expenses, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages and attorneys' fees, expenses, disbursements and Costs and Fees related to such claims.

**1.29**    **Releasees.** "Releasees" shall mean Defendants, as defined herein, their respective affiliates, subsidiaries, successors and all other related entities, including but not limited to all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

**1.30**    **Settlement Claims Administrator.** "Settlement Claims Administrator" means the qualified administrator selected pursuant to Sections 2.2 to mail the Notices as well as any other duties pursuant to Section 2.2. The Settlement Claims Administrator's fees and costs shall be borne by the Gross Settlement Fund.

**1.31**    **Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their share of the Net Settlement Fund calculated in accordance with this Agreement – or otherwise referred to as their Individual Net Amount.

**2.**    **PROCEDURAL ISSUES**

**2.1**    **Settlement Class.** For purposes of settlement only, the Parties agree to class certification pursuant to F.R.C.P. 23 and 29 U.S.C. § 216(b) to include all Class Members and FLSA Collective Members, respectively.

**2.2**    **Settlement Claims Administrator.**

(A)    **Retention.** Within twenty-one (21) days after the filing of a Motion for Preliminary Approval, the Parties shall engage a Settlement Claims Administrator.

5

(B) **Funding Settlement Claims Administrator.** The Settlement Claims Administrator's costs and expenses shall be paid from the Gross Settlement Fund as approved by the Court.

(C) **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice and Claim Forms, (ii) performing a skip trace and resending, within one (1) day of receipt, any Notice and Claim Form returned without a forwarding address or resending to those with a new forwarding address; (iii) responding to inquiries from respective parties regarding requests or communications made by the Parties; (iv) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (v) receiving, retaining and reviewing the Claim Forms submitted by Class Members; (vi) providing Defendants' Counsel with copies of all Claim Forms submitted by Class Members so that Defendants can file the Claim Forms for the FLSA Collective with the Court; (vii) keeping track of requests for exclusion, objection or otherwise including maintaining the original mailing envelope in which the request was mailed; viii) responding to inquiries of members of the Settlement Class regarding procedures for filing objections, opt-out forms, and Claim Forms; (ix) referring to Class Counsel all inquiries by Class Members or Authorized Claimants regarding matters not within the Settlement Claim Administrator's duties specified herein; (x) responding to inquiries of Class Counsel, and Defendants' Counsel consistent with the Settlement Claims Administrator's duties specified herein; (xi) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xii) maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Claim Forms, returned mail and other communications and attempted written or electronic communications with Class Members; (xiii) confirming in writing to Class Counsel, Defendants' Counsel and the Court its completion of the administration of the Agreement; and, (xiv) such other tasks as the Parties mutually agree.

(D) **Responsibilities of Defendants.** Unless some or all of the following are assigned to the Settlement Claims Administrator, Defendant shall be responsible for: (i) calculating the amount of each Authorized Claimant's Settlement Check (to be confirmed by Plaintiffs' counsel); (ii) mailing all required tax forms to Authorized Claimants as provided herein; (iii) distributing all of the Settlement Checks to Authorized Claimants; (iv) calculating and remitting the employer's share of payroll taxes attributable to settlement payments, and preparing appropriate tax forms for Defendants and for each Authorized Claimant; (vi) distributing the Fee Award to Class Counsel; (vii) distributing the Service Awards to Named Plaintiffs.

(E) **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator throughout the claims administration period.

## 2.3 Preliminary Approval Motion.

(A) Within ten (10) days of execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") which shall include (1) the proposed Notice and Claim Form attached hereto as Exhibit A (2) the proposed Preliminary Approval Order, which shall be drafted by Class Counsel and approved by Defendants, (3) an executed version of this Agreement, and (4) the necessary documents, memorandum, affidavits and exhibits for the purposes of certifying a Class under F.R.C.P. 23 and a Collective under 29 U.S.C. § 216(b) for settlement purposes only, and preliminarily approving the Agreement. Defendants may review the terms of the Preliminary Approval Motion and attachments to ensure they are consistent with this Agreement prior to it being filed. Defendants may also review the proposed Preliminary Approval Order prior to the Agreement being executed, and any other documents filed in connection with the Preliminary Approval Motion at least three (3) days prior to filing. The Preliminary Approval Motion also will seek the setting of a date for individuals to submit Claim Forms, opt-out of this Agreement and/or provide objections to this Agreement, which date will be forty-five (45) days from the initial mailing of Notice and Claim Forms to the Class Members by the Settlement Claims Administrator, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(B) Plaintiffs will file the Motion for Preliminary Approval as "unopposed."

## 2. 4 Notice and Claim Forms to Class Members.

(A) **Class List to Settlement Claims Administrator.** Within fifteen (15) days of the Preliminary Approval Order being executed by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator with the Class List. All information provided regarding the Class Members will be treated as confidential information by the Settlement Claims Administrator and may not be used by the Settlement Claims Administrator for any purpose other than to effectuate the terms of settlement. The Settlement Administrator shall not include a list of Authorized Claimants in any affidavit filed in support of approval of this settlement. At the same time that Defendants provide the Class List to the Settlement Administrator, they will also provide this information to Plaintiffs' Counsel.

(B) **Notice.** The Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object, opt-out, participate by filing a Claim Form to join in the settlement, and/or appear at the Fairness Hearing. Within forty (40) days of the entry of the Preliminary Approval Order or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail, the Court–approved Notices and Claim Forms – as authorized by the Court in the Preliminary Approval Order.

(C) **Skip Trace and Re-mailing.** In the event that a Claim Form mailed to a Class Member is returned as undeliverable, the Settlement Claims Administrator shall take reasonable steps to obtain the correct address of such Class Member, including one skip trace, and shall attempt a re-mailing provided it obtains a more recent address. The Settlement Claims Administrator shall also mail a Notice and Claim Form to any Class Member who contacts the Settlement Claims Administrator or Class Counsel during the time period between the initial mailing of the Class Notice and the Bar Date and requests a Notice and Claim Form. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of the number of Notice and Claim Forms sent to a Class Member that is returned as undeliverable, as well as the number of any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. Reasonable costs of locating Class Members will be paid from the Gross Settlement Fund.

(D) **Bar Date.** Class Members that send their Claim Forms by the Bar Date will be deemed Authorized Claimants. To be effective for the purposes of becoming an Authorized Claimant, a Claim Form must be post-marked as mailed by the Bar Date and include a signature in the designated area. The Bar Date shall be (i) forty-five (45) days from the date of the initial mailing or as otherwise set by the Court, with (ii) an additional twenty-five (25) days for any Class Members who did not receive the Notice, or were unable to file the Claim Form within forty-five (45) days due to such factors as change of address, military service, hospitalization, or other extraordinary circumstances.

(E) For purposes of this Agreement, the Named and Opt-in Plaintiffs are deemed to be Authorized Claimants, and are not required to file a Claim Form.

**2.5**   **Class Member Opt-outs.**

(A)   Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the Settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the Nello wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked by the Bar Date.

(B)   The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

(C)   The Settlement Claims Administrator will stamp the received date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt. The Settlement Claims Administrator shall provide all Opt-Out Statements in its compliance affidavit to be filed with the Application for Final Approval. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D)   Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Approval Order in this case, and have any Released Class Claims released and dismissed with prejudice. Only those Class Members who timely complete and return a Claim Form post-marked by the Bar Date will be deemed Authorized Claimants. Defendants shall fund only the amounts allocated to each Authorized Claimant who returns a timely Claim Form as set forth in this Agreement. Defendants shall have no obligation to pay or fund any amounts allocated to Class Members who do not submit a timely Claim Form as set forth in this Agreement. For purposes of this Agreement, the Named and Opt-in Plaintiffs are deemed to be Authorized Claimants, and are not required to return or execute a Claim Form.

**2.6**   **Objections to Settlement.**

(A)   Class Members who wish to present objections to the settlement or the Agreement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail post-marked by the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address and telephone numbers for the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents,

9

as well as a copy of the notice and share form mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection. The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)   An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time.

(C)   The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing or, for objections filed after that deadline, as soon as is practicable.

## 2.7   Fairness Hearing and Application for Final Approval and Dismissal.

(A)   After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents and materials for Final Approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a compliance affidavit from the Settlement Claims Administrator, an application for attorneys' fees, and supporting affidavit and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the Settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Approval Order. All documents shall be provided to Defendants' Counsel at least ten (10) days prior to the Final Fairness Hearing for their review and approval.

(B)   At the Fairness Hearing and through the Application for Final Approval, the Parties shall request that the Court, among other things: (1) certify the Class and the FLSA Collective for purposes of settlement only; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the Settlement; (3) Nello to distribute Settlement Checks to the Authorized Claimants, including Service Awards, if any, to be paid to certain Class Members as described in this Agreement; (4) order Nello to pay Costs and Fees; (5) order the dismissal with prejudice of all Released Class Claims asserted in the Litigation, including the claims of all Class Members who did not opt-out; (6) order entry of the Final Approval Order in accordance with this Agreement; and (7) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

## 2.8   Termination of Agreement

(A)   **Grounds for Settlement Termination.** Either Party may terminate the Agreement if the Court declines to enter the Preliminary Approval Order or Final Approval Order, except if the Court declines to enter the Preliminary Approval Order or Final Approval Order due solely to the amount of attorneys' fees sought by Class Counsel. This Agreement is not contingent upon approval by the Court of Class Counsel's application for attorneys' fees, and if the Court approves the settlement payment amount allocated to the Authorized Claimants as set forth in this Agreement, but not the application for attorneys' fees, (i) the Agreement may not be terminated, and (ii) any Court-required reduction of the attorneys' fees will be reallocated to Defendants. The Defendants may not oppose (a) an application for Fees and Costs of up to $114,166.66, (b) a motion for reconsideration of such application, and/or (c) an appeal regarding Class Counsels' application for attorneys' fees.

(B)   **Defendants' Right to Terminate.** In addition to the grounds for settlement termination stated above, Defendants may terminate this Agreement in the event that: 1) any current Plaintiff or individual who has already filed a consent to join refuses to sign the Settlement Agreement; or, 2) 10% or more of the Class Members submit Opt-out Statements in accordance with Section 2.5.

(C)   **Procedures for Termination.** To terminate this Agreement, the terminating Party shall give written notice to the other Party via email and overnight mail as follows:

    (1)   **Settlement Termination under 2.8 (A).** Within fifteen (15) calendar days after the Court either declines to enter the Preliminary Approval Order or Final Approval Order.

    (2)   **Settlement Termination under 2.8 (B).** Within twenty-one (21) calendar days of the Bar Date as defined in Section 1.4.

(D)   **Effect of Termination.** Termination shall have the following effects:

    1.   The Agreement shall be terminated as to the affected Parties and shall have no force or effect.

    2.   Nello shall have no obligation to make any payments to any party, Class Member, Authorized Claimant, or Class Counsel. However, the parties shall share equally (i) the costs and fees associated with the Settlement Claims Administrator subsequent to the signing of this Agreement, and (ii) if applicable because Notice already has mailed, the costs and expenses of the Settlement Claims Administrator associated with the mailing of a termination notice advising Class Members of the settlement termination. In the event Defendants terminate the Agreement under Section 2.8 (B),

any reasonable expenses incurred by the Settlement Administrator prior to or in connection with the termination shall be borne by Defendants.

3. If the Court grants preliminary approval but not final approval, the Settlement Claims Administrator will provide a Court approved notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

4. The Parties may jointly or individually seek reconsideration of a ruling by the Court declining to enter the Preliminary Approval Order or Final Approval Order in the form submitted by the Parties, or to seek Court approval of a renegotiated settlement.

5. The Litigation will resume as if no settlement had been attempted and the Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the action prior to the entering of this Agreement. The parties shall have a minimum of sixty (60) days to complete discovery. Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action, and to contest the merits of the claims being asserted in the Litigation. The Preliminary Order approving the settlement and certifying the class for settlement purposes only shall be null and void and the case may only be certified if Plaintiffs are granted class or collective certification after full briefing on a motion for such certification.

## 3.   SETTLEMENT TERMS

### 3.1   Settlement Amount.

(A) Defendants agree to pay a maximum Settlement Amount of Three Hundred Forty-Two Thousand Five Hundred Dollars ($342,500.00), which shall be used for allocation and calculation purposes to fully resolve and satisfy (1) any claim for Costs and Fees as approved by the Court, and (2) any and all amounts to be paid to all Authorized Claimants.

(B) **Default.** A default under this Agreement shall be considered to have occurred if Defendants fail to make any scheduled payment within ten (10) business days of the due date for such payment pursuant to Section 3.1 ("Default"). Following any Default, the Settlement Claims Administrator or Class Counsel shall send notice of the Default by email and overnight mail (or by certified mail) (the "Default Notice") to Defendants' Counsel. Defendants shall have ten (10) days from its receipt of the Default Notice to cure the Default. If the Default is not timely cured within that ten (10) day period, Defendants shall reimburse reasonable fees

and costs associated with Class Counsel's recovery of the scheduled payment, as awarded by the Court.

(C)   **Funding.** Defendants shall make payments totaling one-half (1/2) of the total sum owed under this Agreement within thirty (30) days of the Final Effective Date. From this amount, Nello (or the Settlement Claims Administrator if Defendants so elect) shall distribute one-half (1/2) of each Authorized Claimant's share under this Agreement as well as one-half (1/2) of the Fee Award, within seven (7) days thereafter. Three (3) months following the initial payment, Nello (or the Settlement Claims Administrator if Defendants so elect) shall make payments totaling funding one-fourth (1/4) of the total sum owed under this Agreement, to be distributed in the same manner. Three (3) months following the second lump sum payment, Nello (or the Settlement Claims Administrator if Defendants so elect) shall make the final payments totaling one-fourth (1/4) of the total sum owed under this Agreement, to be distributed in the same manner.

(D)   **Reversion.** Any uncashed Settlement Checks or Service Awards which remain uncashed three (3) months after the mailing of the last Settlement Checks will revert to Defendants. For purposes of this provision, the mailing date shall be deemed to be the date posted on the Settlement Checks.

(E)   **Maximum Amount.** The Parties expressly acknowledge that Nello shall not be required to pay more than the Settlement Fund of Three Hundred Forty-Two Thousand Five Hundred Dollars ($342,500.00) to the Authorized Claimants, Class Counsel, the Named Plaintiffs or anyone else regardless of the aggregate amount of claims that are filed.

(F)   All settlement payments to Authorized Claimants shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by the Authorized Claimants. The receipt of any settlement payment will not entitle any Authorized Claimant to additional compensation or benefits under any of Defendants' bonus, profit-sharing, or other compensation or benefit plans or agreements in place at the time of such payment or in effect at any time during the Covered Period, nor will it entitle any Authorized Claimant to any increased retirement, 401K benefits, matching benefits or deferred compensation benefits. The payments provided for hereunder are the sole payments to be made by Defendants to the Authorized Claimants, and that the Authorized Claimants are not entitled to any new, further or additional compensation or benefits as a result of having received the payments hereunder (notwithstanding any contrary language or agreement in any benefit or compensation plan document that may now or might have been in effect during the Covered Period).

## 3.2   Mailing of Settlement Checks

(A) Defendants (or the Settlement Claims Administrator if Defendants so elect) shall mail the Settlement Checks to Authorized Claimants, Settlement Claims Administrator check, and Class Counsels' checks to pay for all Court-approved Costs and Fees as reflected in Section 3.1.

### 3.3 Attorneys' Fees, Expenses and Costs.

(A) At the Fairness Hearing and through the Application for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees, costs and expenses ("Fee Award"), of no more than One Hundred Fourteen Thousand One Hundred Sixty Six Dollars and Sixty Six Cents ($114,166.66). Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B) The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C) The attorneys' fees, expenses and costs shall be paid at the time the payments to Authorized Class Claimants are made in accordance with Section 3.1 above.

### 3.4 Service Awards and Other Payments to Named Plaintiffs.

(A) In return for services rendered to the Class Members and Authorized Claimants, the Named Plaintiffs as defined above will apply to the Court to receive no more than Eight Thousand Five Hundred Dollars ($8,500.00) each as Service Awards from the QSF.

(B) The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval, Final Approval Order or the fairness or reasonableness of settlement. Defendants may not oppose Named Plaintiffs' application for Service Awards.

### 3.5 Net Settlement Fund and Allocation to Authorized Claimants.

Authorized Claimant's individual Settlement Check amounts shall be computed according to the following method:

A. An Authorized Claimant's proportionate share of the Net Settlement Fund shall be determined by Defendants' Counsel and confirmed by Class Counsel pursuant to the formula set forth below:

   (1) Payments from the Net Settlement Fund shall be paid to Authorized Claimants who worked during the period of August 19, 2009 through the date this Agreement is signed;

   (2) All Class Members will receive one point for each week worked for Nello between August 19, 2009 and the date this Agreement is signed;

   (3) The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Class Members during the period of August 19, 2009 through the date this Agreement is signed. ("Point Value").

   (4) Each Authorized Claimant's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

   (5) No Authorized Claimant shall receive less than $100.00. If any Authorized Claimant's Individual Settlement Amount under this formula is less than $100.00, that Authorized Claimant's Individual Settlement Amount will be increased to $100.0, with the difference subtracted from the Net Settlement Fund, and all other Authorized Claimants' Individual Settlement Amounts recalculated according to the formula set forth above to account for the difference.

B. Nello will pay the employer's share of taxes in addition to the Net Settlement Fund. Any portion of the taxes on the unclaimed money will revert back to Defendants.

### 3.6   Tax Characterization.

   (A) For tax purposes, 33% of payments to Authorized Claimants pursuant to Section 3.5 shall be treated as W-2 wage payments and the remainder of such payments shall be treated as 1099 non-wage income as liquidated damages, statutory penalties and interest.

   (B) Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and

social security number on an IRS Form W-2. Payments treated as liquidated damages, statutory penalties and interest shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees, costs and expenses pursuant to Section 3.3 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any Service Awards made pursuant to Section 3.4 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)     The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendants' responsibility.

## 4.     RELEASE

### 4.1     Release of Claims.

(A)     By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member, who does not timely opt-out pursuant to this Agreement, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Releasees, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsurers, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all wage and hour claims asserted, or wage and hour claims that could have been asserted, under federal or state laws or common law by and on behalf of the Class Members in the Litigation. The Released Claims include all claims under federal or state law (including but not limited to the laws of New York) for minimum or overtime wages, spread-of-hours, failure to provide proper wage notices and/or statements, unlawful deductions, uniform expenses, any related wage and hour claims, all claims for gratuities, and all claims for statutory penalties for failure to comply with the Wage Theft Prevention Act, interest on such claims, and attorneys' fees and costs related to such claims through the date of the Preliminary Approval Order.

For those Individual Class Members who return their Claim Forms by the Bar Date who were employed by Defendants during the period beginning three (3) years prior the filing of the Litigation, Released Claims shall also include all claims under the Fair Labor Standards Act for minimum or overtime wages, claims for liquidated damages, interest, attorneys' fees and costs. Defendants' Counsel shall file the Claim Forms for such Class Members with the Court, in

conformity with 29 U.S.C. § 216(b) and this Agreement, redacting any personal or confidential information.

(B)     Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Class Counsel and Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees, expenses or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

### 4.2   Denial of Liability & Confidentiality

(A)     Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, nor as an admission that a class should be certified for any purpose in this case other than settlement purposes.

(B)     No Party shall make any statement to the media relative to this settlement, other than "The matter has been resolved." Class Counsel has agreed to not specifically identify the Litigation or Defendants in any marketing or promotional materials.

## 5.   INTERPRETATION AND ENFORCEMENT

### 5.1   Cooperation Between the Parties; Further Acts.
The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

### 5.2   No Assignment.
Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

### 5.3   Entire Agreement Regarding Resolution of Wage-and-Hour Claims.
This Agreement constitutes the entire agreement between the Parties with regard to the resolution of wage-and-hour claims, and shall be interpreted under New York law to effect a full settlement and release of all such claims, whether known or unknown, asserted or unasserted, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.4**     **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5**     **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6**     **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7**     **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.8**     **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties shall not petition the Court to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

**5.9**     **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.10**   **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.11**   **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.12**   **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature

page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**5.13**    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: July 28, 2017

Madison Global LLC, d/b/a Nello

By: _____

Its: _____

Dated: July 28, 2017                         _____

Alexandru Surdu

STATE OF NEW YORK          )
                                                     ) ss.:
COUNTY OF _Rockland_         )

On the 28 day of July, 2017, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual
taking acknowledgment

Dated: July __, 2017                         _____

Dino Tito

STATE OF NEW YORK          )
                                                     ) ss.:
COUNTY OF _____          )

On the __ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established

that he is executing this Settlement Agreement and General Release. Mr. Tito advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

Signature and Office of individual taking acknowledgment

Anastasia Mayfat

Dated: July 2017

STATE OF NEW YORK )
 ) ss.:
COUNTY OF _Rockland_ )

On the 20th day of July, 2017, before me, the undersigned notary, Anastasia Mayfat personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Mayfat advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

Signature and Office of individual taking acknowledgment

Dated: July 2017

Ciprian Grosu

STATE OF NEW YORK )
 ) ss.:
COUNTY OF _Rockland_ )

On the 20th day of July, 2017, before me, the undersigned notary, Ciprian Grosu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Grosu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

Signature and Office of individual

taking acknowledgment

Dated: July 2017

_____
Luis Lopez

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF Rockland     )

      On the 20 day of July, 2017, before me, the undersigned notary, Luis Lopez personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Lopez advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual taking acknowledgment

4811-7459-6158, v. 5

deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**5.13  Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: July 26th 2017

Madison Global LLC, d/b/a Nello

By:_____

Its:_____

Dated: July 26th 2017

_____
Alexandru Surdu

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF _Rockland_  )

On the 26th day of July, 2017, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual taking acknowledgment

Dated: July 28, 2017

_____
Dino Tito

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF _____  )

On the ___ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established

**5.11    Signatures.**  This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.12    Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**5.13    Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: ~~December~~July    , 201~~7~~6        Madison Global LLC, d/b/a Nello

By:_____

Its:_____


Dated: ~~December~~July    , ~~2016~~2017

_____

                                    Alexandru Surdu

STATE OF NEW YORK        )
                                              ) ss.:
COUNTY OF _____        )

        On the __ day of ~~December~~July, 201~~7~~6, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

                            _____
                            Signature and Office of individual
                            taking acknowledgment


Dated: ~~December~~July    , 201~~7~~6

_____

20

# EXHIBIT A-1

## AGREEMENT AND GENERAL RELEASE

**Madison Global LLC, d/b/a Nello** ("Nello") and **Thomas Makkos** ("Makkos," together with Nello collectively referred to throughout this Agreement as the "Employer"), and **Alexandru Surdu**, his heirs, executors, administrators, successors, and assigns (hereinafter "Surdu"), **Dino Tito**, his heirs, executors, administrators, successors, and assigns (hereinafter "Tito"), **Anastasia Mayfat**, her heirs, executors, administrators, successors, and assigns (hereinafter "Mayfat"), **Ciprian Grosu**, his heirs, executors, administrators, successors, and assigns (hereinafter "Grosu") and **Luis Lopez** his heirs, executors, administrators, successors, and assigns (hereinafter "Lopez") (Surdu, Tito, Mayfat, Grosu and Lopez are collectively referred to throughout this Agreement as the "Employees," and collectively with the Employer are referred to as the "Parties"), agree that:

1.   **Consideration.**

   a.   In consideration for signing this Agreement and General Release, and complying with the terms and conditions here, Nello, or its designee, agrees to pay the Employees Seven Thousand Five Hundred Dollars ($7,500), as follows:

   i.   A check made payable to "Alexandru Surdu" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued;

   ii.   A check made payable to "Dino Tito" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued;

   iii.   A check made payable to "Anastasia Mayfat" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued;

   iv.   A check made payable to "Ciprian Grosu" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued; and

   v.   A check made payable to "Luis Lopez" in the amount of One Thousand Five Hundred Dollars and No Cents ($1,500.00), which shall not be subject to withholdings, and for which a Form 1099 will be issued.

   b.   Nello, or its designee, agrees to make the payments above within ten (10) days after the latter of the date on which: 1) Nello receives a copy of this Agreement and General Release signed by all five Employees and 2) Employees' Class and Collective Action Lawsuit filed with the

United States District Court for the Southern District of New York, Case No. 15-cv-6567(PGG) (the "*Surdu* Litigation"), is dismissed with prejudice.

c. All payments shall be delivered simultaneously to The Klein Law Group, P.C., Attn: Darren Rumack, Esq., 39 Broadway, Suite 1530, New York, NY 10006, (212)-344-9022.

2. **No Consideration Absent Execution of this Agreement.** Employees understand and agree that Employees would not receive the monies and/or benefits specified in Section "1" above, except for Employees' execution of this Agreement and General Release and the fulfillment of the promises contained herein.

3. **General Release of All Claims.** Employees knowingly and voluntarily releases and forever discharge Employer, its owners, shareholders, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, including, but not limited to (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employees have or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);
- The Genetic Information Non-discrimination Act;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The New York State Executive Law (including its Human Rights Law);
- The New York City Administrative Code (including its Human Rights Law);
- Any other federal, state or local civil, human rights, bias, whistleblower, discrimination, retaliation, compensation, employment, labor or other local, state or federal law, regulation or ordinance;
- Any amendments to the foregoing laws;
- Any benefit, payroll or other plan, policy or program;
- Any public policy, contract, third-party beneficiary, tort or common law claim; or,
- Any claim for costs, fees, or other expenses including attorneys' fees, not including those described in paragraph one (1), above.

2

Employee is not waiving any rights he or she may have to: (i) his or her own vested accrued employee benefits under any applicable Nello health, welfare, or retirement benefit plans as of the last day of employment; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; (iv) enforce this Agreement; and/or (v) challenge the validity of this Agreement;

Nothing in this Agreement and General Release prohibits or prevents Employees from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board or a similar agency enforcing federal, state or local anti-discrimination laws. However, to the maximum extent permitted by law, Employees agree that if such an administrative claim is made to such an anti-discrimination agency, Employees shall not be entitled to recover any individual monetary relief or other individual remedies. In addition, nothing in this Agreement and General Release, including but not limited to the release of claims nor the confidentiality and non-disparagement clauses, prohibits Employees from: (1) reporting possible violations of federal law or regulations, including any possible securities laws violations, to any governmental agency or entity, including but not limited to the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, or any agency Inspector General; (2) making any other disclosures that are protected under the whistleblower provisions of federal law or regulations; or (3) otherwise fully participating in any federal whistleblower programs, including but not limited to any such programs managed by the U.S. Securities and Exchange Commission and/or the Occupational Safety and Health Administration. Moreover, nothing in this Agreement and General Release prohibits or prevents Employees from receiving individual monetary awards or other individual relief by virtue of participating in such federal whistleblower programs, as applicable.

4. **Non-Disparagement.** Employees agree that they will not make any comments or perform any acts, directly or indirectly, that are critical, disparaging, derogatory or that may tend to injure the business or reputation of the Releasees. Reciprocally, Employer agrees that Makkos will not make any comments or perform any acts, directly or indirectly, that are critical, disparaging, derogatory or that may tend to injure the business or reputation of Employees. Nothing in this Paragraph 4 shall be read to preclude either Party from making truthful statements.

5. **Acknowledgments and Affirmations.**

(a) Employees affirm that they have not filed, caused to be filed, or presently are a party to any claim against Employer, except the *Surdu* Litigation.

(b) Employees affirm that through this Agreement and the Settlement Agreement and Release resolving the *Surdu* Litigation, they have been paid and/or have received all compensation, wages, bonuses, commissions, other monies, and/or benefits to which Employees may be entitled for work performed and that no other compensation, wages, bonuses, commissions, benefits or other monies are due. Employees affirm that they have been granted any leave to which they were entitled under the Family and Medical Leave Act or related state or

3

local leave or disability accommodation laws.

(c)     Employees affirm that they have no known workplace injuries or occupational diseases.

(d)     Employees further affirm that they have not been retaliated against for reporting any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, except for the allegations asserted in the *Surdu* Litigation (as applicable), which claims they agree are waived herein. Both Employer and Employees acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Employees agree that if such an administrative claim is made, Employees shall not be entitled to recover any individual monetary relief or other individual remedies.

(e)     Employees affirm that each is not a Medicare or Medicaid beneficiary as of the date of this Agreement and, therefore, no conditional payments have been made by Medicare or Medicaid.

6.     **Governing Law and Interpretation.**     This Agreement and General Release shall be governed and conformed in accordance with the laws of the State of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

7.     **Nonadmission of Wrongdoing.**     The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

8.     **Neutral Reference.**     Nello agrees that it will provide a neutral response to any third-party requests for employment references for Employees, consisting solely of Employees' dates of employment, job title(s), and job duties. If a third-party requests any additional information, Nello will inform the requestor that further information is not permitted pursuant to its policies. Employees will direct any requests for a reference to Mr. Makkos.

10.     **Amendment.**     This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

11.     **Entire Agreement.**     This Agreement and General Release and the Settlement Agreement and Release resolving the *Surdu* Litigation set forth the entire agreement

4

between the Parties hereto, and fully supersede any prior agreements or understandings between the Parties.

12.   **Counterparts**.   This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute on and the same instrument.

13.   **Competency to Waive Claims**.   Employees confirm that each is competent to affect a knowing and voluntary general and unlimited release of all claims, as contained herein, and to enter into this Agreement.   They are not affected or impaired by illness, use of alcohol, drugs, medication or other substances or otherwise impaired.   To the contrary, they have a clear and complete understanding of this Agreement.   Employees are not a party to any bankruptcy, lien, creditor-debtor or other proceeding which would impair their right to settle all claims, to waive all claims and to indemnify Releasees from any claims by or relating to Employees.

14.   **Execution**.

(a)   The terms of this Agreement are the product of mutual negotiation and compromise between the Parties.   The meaning, effect and terms of this Agreement have been fully explained to Employees by their counsel, The Klein Law Group, P.C.   Employees fully understand that this Agreement generally releases, settles, bars and waives any and all claims that Employees possibly could have against Releasees.   Employees further represent that they are fully satisfied with the advice and counsel provided by The Klein Law Group, P.C.

(b)   Employees also confirm that they have not been induced by any representation or promise that does not expressly and unequivocally appear in this Agreement or by any act or omission of Releasees to execute this Agreement and was not caused to sign this Agreement without the opportunity for or actual consultation with counsel.

(c)   Employees fully understand the terms of this Agreement and do not require translation service or other assistance.

15.   **Revocation**.   Each Employee who is forty years of age or older at time of signing this Agreement may revoke this Agreement for a period of seven (7) calendar days following the day such Employee signs this Agreement.   Any revocation within this period must be submitted, in writing to Noel P. Tripp, Esq., Jackson Lewis P.C., 58 South Service Rd., Suite 250, Melville, New York 11747 and state, "I hereby revoke my acceptance of our agreement and general release."   The revocation must be personally delivered to Noel P. Tripp or his designee or mailed to Noel P. Tripp and Postmarked within seven (7) calendar days after such Employee signs this Agreement and General Release.   If any Employee revokes his or her acceptance pursuant to this Paragraph, this Agreement is revoked as to all.

**EMPLOYEES ARE ADVISED THAT EACH HAS UP TO TWENTY-ONE**

**(21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEES ALSO ARE ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND CONFIRM THAT THEY HAVE DONE SO AND ARE SATISFIED WITH THE ADVICE OF THEIR COUNSEL, KLEIN LAW GROUP.**

**EMPLOYEES AGREE THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS SET FORTH ABOVE, EMPLOYEES FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR COUNSEL, DARREN RUMACK OF KLEIN LAW GROUP, ESQ., ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE THE CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement as of the date set forth below:

Dated: July ___, 2017

Madison Global LLC, d/b/a Nello

By: _____

Its: _____

Dated: July 20, 2017

_____
Alexandru Surdu

STATE OF NEW YORK )
                                    ) ss.:
COUNTY OF _Rockland_ )

On the _20th_ day of July, 2017, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

6

Signature and Office of individual
taking acknowledgment

Dated: July __, 2017

_____
Dino Tito


STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF _____   )

        On the __ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Tito advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Anastasia Mayfat

Dated: July 2017

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF Rockland   )

        On the 2l day of July, 2017, before me, the undersigned notary, Anastasia Mayfat personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Mayfat advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment
ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156583
Qualified in Rockland County
Commission Expires Dec. 4, 20__

Dated: July 27, 2017

_____
Ciprian Grosu

STATE OF NEW YORK      )
                        ) ss.:
COUNTY OF _Rockland_    )

        On the 27 day of July, 2017, before me, the undersigned notary, Ciprian Grosu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Grosu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual
taking acknowledgment

Dated: July 27, 2017

_____
Luis Lopez

STATE OF NEW YORK      )
                        ) ss.:
COUNTY OF _Rockland_    )

        On the 27 day of July, 2017, before me, the undersigned notary, Luis Lopez personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Lopez advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__

_____
Signature and Office of individual
taking acknowledgment

4819-9842-1579, v. 4

8

Dated: July 2_ 2017

_Dino Tito_
Dino Tito

STATE OF NEW YORK )
                     ) ss.:
COUNTY OF _____ )

On the ___ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Tito advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Dated: July 2_, 2017

_____
Anastasia Mayfat

STATE OF NEW YORK )
                     ) ss.:
COUNTY OF _Rockland_ )

On the 2_ day of July, 2017, before me, the undersigned notary, Anastasia Mayfat personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Mayfat advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified in Rockland County
Commission Expires Dec. 4, 20__



The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement as of the date set forth below:

Dated: July ___, 2017

Madison Global LLC, d/b/a Nello

By: _____

Its: _____

Dated: July ___, 2017

_____
Alexandru Surdu

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF _____  )

On the ___ day of July, 2017, before me, the undersigned notary, Alexandru Surdu personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Surdu advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Dated: July ___, 2017

_____
Dino Tito

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF _____  )

On the ___ day of July, 2017, before me, the undersigned notary, Dino Tito personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Tito advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.