UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

ALEXANDRU SURDU, DINO TITO,          :
ANASTASIA MAYFAT, CIPRIAN GROSU
and LUIS LOPEZ, on behalf of         :
themselves and those similarly
situated, et al.,                    :

                Plaintiffs,          :

        -against-                    :

MADISON GLOBAL, LLC, d/b/a NELLO,    :
NELLO BALAN and THOMAS MAKKOS,
                                     :
                Defendants.
                                     :
------------------------------------X



15 Civ. 6567 (HBP)

OPINION
AND ORDER

        PITMAN, United States Magistrate Judge:


I.  Introduction

        Plaintiffs Alexandru Surdu, Dino Tito, Anastasia
Mayfat, Ciprian Grosu and Luis Lopez, on behalf of themselves and
all others similarly situated, commenced this action pursuant to
the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et
seq., and the New York Labor Law (the "NYLL") §§ 190 et seq.
against defendants Madison Global, LLC d/b/a Nello ("Nello"),
Nello Balan and Thomas Makkos to recover unpaid minimum wages,
misappropriated gratuities, uniform purchase and maintenance
costs and penalties for failure to provide wage statements and
notices.  Plaintiffs brought the action as a collective action

pursuant to 29 U.S.C. § 216(b) with respect to the FLSA claims and as a class action with respect to the NYLL claims. Following the filing of the complaint, opt-in plaintiffs Gulnaz Badakshanova, Constantine Haralabopolous, Bilguun Ganhuyag, Francesco Desideri, Gian Maria Montoro, Stefano Naia, Adnan Dibra, Susanna De Martino, Luca Federico and Juan Carlos Rios consented to join the FLSA collective action.

By letter to the Honorable Paul G. Gardephe, United States District Judge, dated September 30, 2016, the parties informed the Court that they had reached a settlement of the FLSA collective action and the NYLL class action (Letter from Noel P. Tripp, Esq., to Judge Gardephe, dated Sept. 30, 2016 (Docket Item ("D.I.") 49)). The parties subsequently memorialized their agreement in a written settlement agreement (the "Settlement Agreement").

Plaintiffs now move for preliminary approval of the Settlement Agreement and other related relief. Specifically, plaintiffs seek an order (1) conditionally certifying a NYLL class pursuant to Rule 23(a) and (b)(3); (2) appointing the Klein Law Group, P.C. as class counsel; (3) preliminarily approving the Settlement Agreement; (4) approving plaintiffs' proposed Notice of Class Action Settlement (the "Proposed Notice") and (5) scheduling a Fairness Hearing to consider the parties' motion for

2

final approval of the settlement, attorneys' fees and costs and a service award to Surdu, Tito, Mayfat, Grosu and Lopez (Notice of Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement, dated July 28, 2017 (D.I. 66); Memorandum of Law in Support of Plaintiffs' Renewed Motion for Preliminary Approval of Settlement, dated July 28, 2017 (D.I. 67) ("Pl.'s Mem."), at 1). The parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, plaintiffs' motion is granted.

## II. Facts

### A. Relevant Factual and Procedural Background

Surdu, Tito, Mayfat, Grosu and Lopez commenced this action on August 19, 2015. The complaint alleges that the members of the FLSA collective and the putative NYLL class are or were employed by defendants as tipped "food service workers," which the complaint defines as "servers, bussers, runners, and bartenders" (Class and Collective Action Complaint, dated Aug. 11, 2015 (D.I. 1) ("Compl.") ¶¶ 1, 18).[1] The complaint further

---

[1]The FLSA collective includes food service workers that
(continued...)

alleges that defendants (1) failed to pay the minimum wage by improperly applying the FLSA and NYLL's tip credit allowance; (2) unlawfully retained portions of the food service workers' tips and distributed them to non-tip-eligible employees; (5) failed to reimburse food service workers for uniform purchase and maintenance costs and (6) failed to provide food service workers with wage statements and notices as required by the NYLL (Compl. ¶¶ 31-98). Plaintiffs filed an amended complaint on May 10, 2016, adding retaliation claims on behalf of Surdu and Tito (Stipulation Regarding Plaintiffs' Proposed Amendment of Complaint, dated May 9, 2016 (D.I. 38), Ex. A ("Amended Compl.") ¶¶ 75-88, 113-33).

          The parties engaged in extensive discovery to develop their claims and defenses. Plaintiffs produced approximately 1,500 pages of documents, including tip sheets, pay stubs, schedules, employee handbooks, dry cleaning receipts, disciplinary write-ups and tax forms (Declaration of Darren P.B. Rumack, Esq., dated July 28, 2017 (D.I. 68) ("Rumack Decl.") ¶ 15). Defendants produced approximately 2,000 pages of documents, including pay stubs, schedules and personnel files for the named

---

$^1$(...continued)
worked for defendants on or after August 19, 2012, and the NYLL class includes food service workers that worked for defendants on or after August 19, 2009 (Compl. ¶¶ 16, 25).

and opt-in plaintiffs (Rumack Decl. ¶ 16). According to plain-
tiffs' calculations, plaintiffs and the putative class members
are owed approximately $375,000.00 in misappropriated tips
(Rumack Decl. ¶ 22). Plaintiffs have not submitted any estimate
of the class's other elements of damages.

In September 2016, the parties engaged in an arm's-
length negotiation during an hours-long mediation session with
mediator Ralph S. Berger, whom plaintiffs' counsel describes as
an "experienced and well-known mediator" in wage and hour cases
(Rumack Decl. ¶¶ 17-19). At the mediation, following "several
hours of negotiations," the parties reached an agreement on the
settlement amount (Rumack Decl. ¶ 19). The parties thereafter
negotiated the remaining terms of the settlement, which are
memorialized in the Settlement Agreement (Rumack Decl. ¶ 23;
Letter from Darren Rumack, Esq., to the undersigned, dated Aug.
25, 2017 (D.I. 72) ("Rumack Letter"), Ex. A).

## B. The Settlement Agreement

The Settlement Agreement provides that defendants,
without conceding the validity of plaintiffs' claims or admitting
liability, agree to create a common settlement fund of $342,500.-
00 (Rumack Letter, Ex. A § 3.1(A)). From the settlement fund,
Surdu, Tito, Mayfat, Grosu and Lopez will each receive an

5

$8,500.00.00 service award, a settlement claims administrator

will receive a fee[2] to administer the settlement and counsel for

plaintiffs will receive no more than $114,166.66, or one-third of

the total settlement amount, in attorneys' fees and costs,

subject to the Court's approval (Rumack Letter, Ex. A §§ 1.10,

2.2(B), 3.3(A), 3.4(A)).

The Settlement Agreement provides that the claims

administrator will allocate the remainder of the settlement

proceeds to those class members who validly file a claim form

("Authorized Claimants") as follows:

> (2)  All Class Members will receive one point for each
> week worked for Nello between August 19, 2009 and the
> date [the] Agreement is signed[.]
>
> (3)  The Net Settlement Fund will be divided by the
> aggregate number of points accrued by all of the Class
> Members during the period of August 19, 2009 through
> the date this Agreement is signed.  ("Point Value").
>
> (4)  Each Authorized Claimant's total points will be
> multiplied by the Point Value to determine his or her
> Individual Settlement Amount.
>
> (5)  No Authorized Claimant shall receive less than
> $100.00.  If any Authorized Claimant's Individual
> Settlement Amount under this formula is less than
> $100.00, that Authorized Claimant's Individual Settle-
> ment Amount will be increased to $100.0[0], with the
> difference subtracted from the Net Settlement Fund, and
> all other Authorized Claimants' Individual Settlement

---

[2]The Settlement Agreement does not specify the amount of the
fee that will be paid to the settlement claims administrator.

Amounts recalculated according to the formula set forth
above to account for the difference.

(Rumack Letter, Ex. A §§ 1.2, 3.5(A)).  Any portion of the net

settlement amount not claimed by class members will revert to

defendants (Rumack Letter, Ex. A § 3.5(B)).  For tax purposes,

settlement checks paid to class members will be allocated 33% to

W-2 wage payments and 67% to 1099 non-wage payments for interest,

liquidated damages and statutory penalties (Rumack Letter, Ex. A

§ 3.6(A)).

Additionally, the Settlement Agreement provides that

upon final approval of the Settlement Agreement, each individual

who does not opt out of the class, including those who do not

submit a claim form, will release defendants from all wage and

hour claims that were brought, or could have been brought, in

this action through the date of this Order (Rumack Letter, Ex. A

§§ 1.28, 4.1(A)).

The Settlement Agreement also provides that neither

side shall make any statement to the media about the settlement,

other than "'[t]he matter has been resolved'" (Rumack Letter, Ex.

A § 4.2(B)).

Finally, the Settlement Agreement provides that either

party has the right to terminate the Settlement Agreement if I

decline to preliminarily or finally approve the Settlement

Agreement, except if the denial is solely due to attorneys' fees (Rumack Letter, Ex. A § 2.8(A)). Additionally, defendants have the right to terminate the Settlement Agreement if ten percent or more of the putative class members opt out (Rumack Letter, Ex. A § 2.8(B)).

III.  Analysis

A.  Conditional Certification
of the NYLL Rule 23 Class

Plaintiffs request that the Court conditionally certify, for the purpose of settlement only, a class pursuant to Rule 23 consisting of individuals who worked as servers, runners, bussers and bartenders and who received tips at Nello from August 19, 2009 through the date of this Order.[3]

"Before certification is proper for any purpose -- settlement, litigation, or otherwise -- a court must ensure that the requirements of Rule 23(a) and (b) have been met." Denney v. Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006); accord Manley v. Midan Rest. Inc., 14 Civ. 1693 (HBP), 2016 WL 1274577 at *3

---

[3]Individuals who meet this definition, but who have released all claims against defendants as a result of settlements in cases bearing docket numbers 09 Civ. 9940 (PAC) (S.D.N.Y.) and 12 Civ. 3060 (JPO) (S.D.N.Y.), would be excluded from this putative class.

(S.D.N.Y. Mar. 30, 2016) (Pitman, M.J.); Long v. HSBC USA Inc.,
14 Civ. 6233 (HBP), 2015 WL 5444651 at *5 (S.D.N.Y. Sept. 11,
2015) (Pitman, M.J.); Cohen v. J.P. Morgan Chase & Co., 262
F.R.D. 153, 157-58 (E.D.N.Y. 2009). Class certification under
Rule 23(a) requires that

> (1) the class is so numerous that joinder of all mem-
> bers is impracticable; (2) there are questions of law
> or fact common to the class; (3) the claims . . . of
> the representative parties are typical of the claims .-
> . . of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the
> class.

"If each of these four threshold requirements are met,
class certification is appropriate if the action also satisfies
one of the three alternative criteria set forth in Rule 23(b)."
Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *5; accord
Manley v. Midan Rest. Inc., supra, 2016 WL 1274577 at *3;
Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 174 (S.D.N.Y. 2014)
(Pitman, M.J.). Here, plaintiffs argue that class certification
is proper under Rule 23(b)(3), which provides that a class action
may be maintained where

> the questions of law or fact common to class members
> predominate over any questions affecting only individ-
> ual members, and . . . a class action is superior to
> other available methods for fairly and efficiently
> adjudicating the controversy.

The party seeking class certification bears the burden
of establishing each of these elements by a "preponderance of the

9

evidence." <u>Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.</u>, 546 F.3d 196, 202 (2d Cir. 2008); <u>see Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997); <u>Fedotov v. Peter T. Roach & Assocs., P.C.</u>, 354 F. Supp. 2d 471, 478 (S.D.N.-Y. 2005) (Haight, D.J.). Although the Second Circuit has "directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," <u>In re NASDAQ Market-Makers Antitrust Litig.</u>, 169 F.R.D. 493, 504 (S.D.N.Y. 1996) (Sweet, D.J.), <u>citing, inter alia, Korn v. Franchard Corp.</u>, 456 F.2d 1206, 1208-09 (2d Cir. 1972), class certification should not be granted unless, after a "'rigorous analysis,'" the court is satisfied that Rule 23's requirements have been met. <u>Spagnola v. Chubb Corp.</u>, 264 F.R.D. 76, 92 (S.D.N.Y. 2010) (Baer, D.J.), <u>quoting In re Initial Pub. Offerings Sec. Litig.</u>, 471 F.3d 24, 33 (2d Cir. 2006). Any doubts concerning the propriety of class certification should be resolved in favor of class certification. <u>Long v. HSBC USA Inc.</u>, <u>supra</u>, 2015 WL 5444651 at *6, <u>citing Levitt v. J.P. Morgan Sec., Inc.</u>, 710 F.3d 454, 464 (2d Cir. 2013).

1. <u>Rule 23(a)'s Requirements</u>

   a. <u>Numerosity</u>

Rule 23(a) requires that the members of the proposed class be "so numerous that joinder of all members is impracticable." Here, plaintiffs' counsel represents that it has identified more than 82 members of the putative class (Rumack Decl. ¶ 20). This clearly meets the numerosity requirement. <u>Alcantara v. CNA Mgmt., Inc.</u>, 264 F.R.D. 61, 64 (S.D.N.Y. 2009) (Jones, D.J.) ("[N]umerosity is generally presumed when the prospective class consists of 40 members or more."), <u>citing Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 370 (S.D.N.Y. 2007) (McMahon, D.J.); <u>accord Consolidated Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995); <u>Lizondro-Garcia v. Kefi LLC</u>, <u>supra</u>, 300 F.R.D. at 174.

   b. <u>Commonality</u>

Rule 23(a) also requires the existence of questions of law or fact common to the class. The Supreme Court has emphasized that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 349-50 (2011), <u>quoting General Tel. Co. v. Falcon</u>, 457 U.S. 147, 157 (1982). "[S]ince

11

[a]ny competently crafted class complaint literally raises common questions," I must assess whether the common questions are capable of "generat[ing] common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, supra, 564 U.S. at 349-50 (emphasis and second alteration in original; internal quotation marks omitted); accord Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 175. "[P]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'" Fox v. Cheminova, Inc., 213 F.R.D. 113, 126 (E.D.N.Y. 2003), quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam). "Even a single common legal or factual question will suffice." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (Oetken, D.J.) (internal quotation marks omitted).

Plaintiffs claim, and defendants do not dispute, that class members worked as tipped employees for defendants on or after August 19, 2009. Plaintiffs also identify several questions common to the putative class, including whether defendants paid minimum wages and whether defendants misappropriated tips (Pl.'s Mem., at 16). This is sufficient to satisfy the commonality requirement. See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011) ("[T]he District

Court properly found there to be questions of law or fact common to the class . . . since the Plaintiffs' NYLL class claims all derive from the same compensation policies and tipping practices- . . . ."); Sanchez v. JMP Ventures, L.L.C., 13 Civ. 7264 (GWG), 2015 WL 539506 at *3 (S.D.N.Y. Feb. 10, 2015) (Gorenstein, M.J.); Flores v. One Hanover, LLC, 13 Civ. 5184 (AJP), 2014 WL 632189 at *3 (S.D.N.Y. Feb. 18, 2014) (Peck, M.J.) (plaintiffs and class members "share common issues of fact and law, including whether Defendants unlawfully took a 'tip credit' and paid less than the minimum wage . . . [and] misappropriated tips by unlawfully distributing a portion to non-tip eligible workers"); Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 175.

### c. Typicality

Rule 23(a)'s third requirement, typicality, ensures that "'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Marisol A. v. Giuliani, supra, 126 F.3d at 376 (alteration in original), quoting General Tel. Co. v. Falcon, supra, 457 U.S. at 157 n.13. "The typicality requirement is satisfied where 'each class member's claim arises from the same course of events and each class member makes

similar legal arguments to prove the defendant's liability.'" Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *7, quoting, inter alia, In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009); accord Marisol A. v. Giuliani, supra, 126 F.3d at 376; Manley v. Midan Rest. Inc., supra, 2016 WL 1274577 at *4.

Plaintiffs satisfy the typicality requirement of Rule 23(a) because their claims arise from the same factual and legal circumstances that form the bases of the putative class members' claims. Specifically, plaintiffs and members of the putative class worked as tipped employees for defendants and claim that they were subjected to the same minimum wage and tipping practices (Pl.'s Mem., at 16-17). This is sufficient to satisfy the typicality requirement.

### d. Adequacy

To satisfy Rule 23(a)'s adequacy requirement, "the named plaintiffs must 'possess the same interest[s] and suffer the same injur[ies] as the class members.'" In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (alterations in original), quoting Amchem Prods., Inc. v. Windsor, supra, 521 U.S. at 625-26. "Adequate representation is a twofold requirement: class counsel must be qualified and able

to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." Fox v. Cheminova, Inc., supra, 213 F.R.D. at 127, citing In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992); accord Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007).

Plaintiffs' counsel has cited five recent multi-plaintiff cases for which he has served as the attorney of record and states that that is a non-exhaustive list (Rumack Decl. ¶ 30). Additionally, there is no evidence that the named plaintiffs have any conflicts with any of the class members. Accordingly, I conclude that plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

### e. The Implied Requirement of Ascertainability

Ascertainability is not expressly required under the terms of Rule 23, but is an implied element of class certification. As explained by the late Honorable Harold Baer, United States District Judge, in Fears v. Wilhelmina Model Agency, Inc., 02 Civ. 4911 (HB), 2003 WL 21659373 at *2 (S.D.N.Y. July 15, 2003):

> "[W]hile Rule 23(a) does not expressly require that a class be definite in order to be certified, a require-

ment that there be an identifiable [aggrieved] class has been implied by the courts." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig., 209 F.R.D. 323, 336 (S.D.N.Y. 2002) (internal quotes and citations omitted); Dunnigan v. Metropolitan Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003). "An identifiable class exists if its members can be ascertained by reference to objective criteria." MTBE Prods., 209 F.R.D. at 336. Membership should not be based on subjective determinations, such as the subjective state of mind of a prospective class member, but rather on objective criteria that are administratively feasible for the Court to rely on to determine whether a particular individual is a member of the class. Id. Further, the Court "must be able to make this determination without having to answer numerous fact-intensive inquiries." Id. at 336 n.20 (quoting Daniels v. City of New York, 198 F.R.D. 409, 414 (S.D.N.Y. 2001).

(Alterations in original); accord Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015); Flores v. Anjost Corp., 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (McMahon, D.J.); see Manual for Complex Litigation § 21.222 at 270 (4th ed. 2004) ("Although the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable."). In this case, plaintiffs' counsel represents, and defendants do not dispute, that both plaintiffs and defendants produced extensive documentation, including pay stubs and schedules, from which class members can be identified (Rumack Decl. ¶¶ 14-16). Because plaintiffs can identify the class by reviewing these documents, I conclude that the implied ascertainability requirement of Rule 23 is met here.

## 2. Rule 23(b)(3)'s Requirements

As discussed above, Rule 23(b)(3) requires that a plaintiff seeking to represent a class establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### a. Predominance

The Second Circuit explained the predominance requirement in <u>Moore v. PaineWebber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002):

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem Prods-., Inc. v. Windsor</u>, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L.E.2d 689 (1997). It is a more demanding criterion than the commonality inquiry under Rule 23(a). <u>Id</u>. at 623-24, 117 S. Ct. 2231. Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof. [<u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 136 (2d Cir. 2001)].

See <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 549 (2d Cir. 2010) ("[E]conomies of time, effort, and expense in fully resolving

each plaintiff's claim will only be served, and the predominance requirement satisfied, if the plaintiffs can show that some . . . questions can be answered with respect to the members of the class as a whole through generalized proof and that those common issues are more substantial than individual ones." (brackets in original; internal quotation marks and citations omitted)).

Plaintiffs' counsel argues that the predominance requirement is satisfied because the class is unified by common factual and legal issues: "[C]lass members' common factual allegations and legal theory, $i.e.$ that Defendants implemented the same employment policies and practices, which violated federal and state wage and hour laws, predominate over any variations among class members" (Pl.'s Mem., at 18). Again, defendants do not dispute plaintiffs' counsel's contention.

Defendants' alleged failure to pay minimum wages and misappropriation of plaintiffs' tips are the central issues in this litigation and relate to the general practices of defendants with respect to their tipped employees. Accordingly, the predominance requirement is met. Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 177 ("Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies 'are about the most perfect

18

questions for class treatment.'"), quoting Iglesias-Mendoza v. La Belle Farm, Inc., supra, 239 F.R.D. at 373; accord Shahriar v. Smith & Wollensky Rest. Grp., Inc., supra, 659 F.3d at 253 (predominance requirement satisfied where plaintiffs alleged that servers were required to share tips with a manager).

### b. Superiority

Rule 23(b)(3) also requires plaintiffs to demonstrate that class-wide adjudication is "superior to other available methods for fairly and efficiently adjudicating the controversy." In making this determination, the court must balance "the advantages of a class action against those of alternative available methods of adjudication." Anwar v. Fairfield Greenwich Ltd., 289 F.R.D. 105, 114 (S.D.N.Y. 2013) (Marrero, D.J.), vacated on other grounds sub nom., St. Stephen's Sch. v. PricewaterhouseCoopers Accountants N.V., 570 F. App'x 37 (2d Cir. 2014) (summary order). Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry:

> (A) the class members' interests in individually con-
> trolling the prosecution or defense of separate ac-
> tions; (B) the extent and nature of any litigation
> concerning the controversy already begun by or against
> class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the
> particular forum; and (D) the likely difficulties in
> managing a class action.

Although there has been previous litigation against defendants arising out of similar allegations presented here, <u>see</u> footnote 3, <u>supra</u>, the rest of these factors weigh in favor of superiority. First, litigation by way of a class action is more economically feasible due to the putative class members' limited financial resources (Pl.'s Mem., at 19). Accordingly, "[a] class action is likely the only means by which all plaintiffs can practically adjudicate their state law claims." <u>Long v. HSBC USA Inc.</u>, <u>supra</u>, 2015 WL 5444651 at *9; <u>see Iglesias-Mendoza v. La Belle Farm, Inc.</u>, <u>supra</u>, 239 F.R.D. at 373. Second, concentrating this litigation in the Southern District of New York is appropriate because the allegedly wrongful conduct occurred within this jurisdiction, and Defendants' business is located in the jurisdiction (Pl.'s Mem., at 19). Third, class adjudication, as opposed to multiple individual actions, will conserve judicial resources and avoid the waste and delay of repetitive proceedings on the same issues.

Accordingly, for all the foregoing reasons, I conditionally certify, pursuant to Rule 23(a) and (b)(3), a class consisting of individuals who worked as servers, runners, bussers and bartenders and who received tips at Nello from August 19,

2009 through the date of this Order.[4]  See, e.g., Grant v. Warner
Music Grp. Corp., 13 Civ. 4449 (PGG), 13 Civ. 5031 (PGG), 2015 WL
10846300 at *1 (S.D.N.Y. Aug. 21, 2015) (Gardephe, D.J.) (condi-
tionally certifying class "consisting of all individuals who were
Interns for Defendants in the State of New York from June 17,
2007 through the date of this Preliminary Approval Order"); Davis
v. J.P. Morgan Chase & Co., 775 F. Supp. 2d 601, 612 (W.D.N.Y.
2011) (conditionally certifying class "consisting of all individ-
uals who were employed by defendant JPMorgan Chase in the United
States in a Covered Position either (1) at any time from Septem-
ber 8, 1999 through the date of this Decision and Order in any
state other than New York, or (2) at any time from September 8,
1996 through the date of this Decision and Order in New York
State").

## B.  Appointment of Class Counsel

Rule 23(c)(1)(B) provides that "[a]n order that certi-
fies a class action must . . . appoint class counsel under Rule
23(g)."  Darren P.B. Rumack, Esq., lead counsel for plaintiffs,

---

[4]Individuals who meet this definition, but who have released
all claims against defendants as a result of settlements in cases
bearing docket numbers 09 Civ. 9940 (PAC) (S.D.N.Y.) and 12 Civ.
3060 (JPO) (S.D.N.Y.), are excluded from the class.

requests that I designate his firm, the Klein Law Group, P.C., as counsel for the NYLL class.

Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B).

As discussed in Section III(A)(1)(d), _supra_, plaintiffs' counsel has experience litigating wage-and-hour cases, including multi-plaintiff cases, and is knowledgeable concerning the applicable law (Rumack Decl. ¶¶ 29, 30-31, 33). Moreover, the Klein Law Group, P.C. has done substantial work in investigating, prosecuting and settling the action (Rumack Decl. ¶¶ 11-19). Although the Klein Law Group, P.C. did not represent plaintiffs from the lawsuit's inception, counsel met with several of the named plaintiffs, reviewed documents and corresponded with defendants regarding pending discovery matters before their substitution as counsel (Rumack Decl. ¶ 12). When substituted as counsel, counsel prosecuted the action and participated in an

hours-long mediation to resolve the dispute (Rumack Decl. ¶¶ 15-19).  Accordingly, the Klein Law Group, P.C. is appointed counsel for the class.

## C.  Preliminary Approval
   of the Settlement Agreement

Plaintiffs also seek preliminary approval of the Settlement Agreement, which would resolve the claims brought on behalf of the FLSA collective and the NYLL class.

Pursuant to Rule 23(e), the settlement of a class action is not effective until judicially approved.  Although there is a general policy favoring settlements, the court may approve a class action settlement only if it is "fair, adequate, and reasonable, and not a product of collusion."  Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).  "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

In assessing procedural fairness, there is a "presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length

negotiations between experienced, capable counsel after meaning-ful discovery.'" McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009) (alteration in original), quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 116.

In assessing whether a settlement is substantively fair, reasonable and adequate, courts in this Circuit use the nine-factor test set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000). McReynolds v. Richards-Cantave, supra, 588 F.3d at 804; accord Charron v. Wiener, 731 F.3d 241, 247 (2d Cir. 2013); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (A. Carter, D.J.). Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the set-tlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of estab-lishing liability; (5) the risks of establishing dam-ages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reason-ableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

McReynolds v. Richards-Cantave, supra, 588 F.3d at 804, quoting City of Detroit v. Grinnell Corp., supra, 495 F.2d at 463.

Preliminary approval is the first step in the settlement of a class action whereby the court "must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement." Manley v. Midan Rest. Inc., supra, 2016 WL 1274577 at *8 (alteration in original; internal quotation marks omitted); accord Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 179; Davis v. J.P. Morgan Chase & Co., supra, 775 F. Supp. 2d at 607.

> Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Clark v. Ecolab, Inc., Nos. 07 Civ. 8623 (PAC) et al., 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11.25 (4th ed. 2002)). Nevertheless, courts often grant preliminary settlement approval without requiring a hearing or a court appearance. See Hernandez v. Merrill Lynch & Co., Inc., No. 11 Civ. 8472 (KBF)(DCF), 2012 WL 586274-9, at *1 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." In re Traffic Exec. Ass'n, 627 F.2d 631, 634 (2d Cir. 1980); see Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); see also Girault v. Supersol

661 Amsterdam, LLC, No. 11 Civ. 6835 (PAE), 2012 WL 2458172, at *1 (S.D.N.Y. June 28, 2012) (granting preliminary approval where the "proposed Settlement Agreement [was] within the range of possible settlement approval, such that notice to the Class [was] appropriate"); Danieli v. IBM, No. 08 Civ. 3688, 2009 WL 6583144, at *4-5 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted"). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." Yuzary, 2013 WL 1832181, at *1 (internal quotation marks and citation omitted).

Tiro v. Public House Invs., LLC, 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 2254551 at *1 (S.D.N.Y. May 22, 2013) (McMahon, D.J.) (alterations in original).

I previously refused to preliminarily approve the Settlement Agreement on several grounds (Order, dated May 23, 2017 (D.I. 61)). First, it was impossible to evaluate the reasonableness of the settlement fund because counsel did not provide an estimate of the putative class's damages. Second, the Settlement Agreement contained a general release for the named plaintiffs that ran only in favor of defendants. Third, the Settlement Agreement contained a clause in Section 4.2(C) prohibiting plaintiffs from publicizing the terms of the agreement. I ordered the parties to either (1) (a) provide an estimate of the putative class's damages; (b) narrow the named plaintiffs'

release to the conduct set forth in the lawsuit and (c) delete the confidentiality clause identified above or (2) file a letter indicating their intention to abandon the settlement and proceed with litigation.

The parties have submitted a revised Settlement Agreement that addresses the foregoing issues. In accordance with my previous Order, counsel has provided an estimate of the putative class's damages. Counsel has also deleted the general release from the Settlement Agreement; instead, the named plaintiffs agreed to a general release by a separate agreement.[5] Finally, the parties deleted the confidentiality clause that previously appeared in Section 4.2(C) of the Settlement Agreement.

Applying the foregoing principles, including the Grinnell factors "to the extent they are relevant at the preliminary stage," Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *3, I conclude, based on plaintiffs' memorandum of law, the declaration of Darren P.B. Rumack, Esq., and my own review of the Settlement Agreement, that there is probable cause to believe that the Settlement Agreement is fair, reasonable and adequate.

---

[5]Such a bifurcated settlement agreement is permissible. Ortiz v. Breadroll, LLC, 16 Civ. 7998 (JLC), 2017 WL 2079787 at *2 (S.D.N.Y. May 15, 2017) (Cott, M.J.); Yunda v. SAFI-G, Inc., 15 Civ. 8861 (HBP), 2017 WL 1608898 at *2 (S.D.N.Y. Apr. 28, 2017) (Pitman, M.J.); Abrar v. 7-Eleven, Inc., No. 14-cv-6315 (ADS)(AKT), 2016 WL 1465360 at *1 (E.D.N.Y. Apr. 14, 2016).

First, litigation of this matter, which includes more than 82 class members and both federal and state claims, through trial would be complex, costly and long. Henry v. Little Mint, Inc., 12 Civ. 3996 (CM), 2014 WL 2199427 at *7 (S.D.N.Y. May 23, 2014) (McMahon, D.J.) ("'Most class actions are inherently complex and settlement avoids the costs, delays and [the] multitude of other problems associated with them.'"), quoting In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (Kram, D.J.), aff'd sub nom., D'Amato v. Deutsche Bank, supra, 236 F.3d 78. Additional discovery, including depositions of all parties, would be required (Pl.'s Mem., at 9). "Preparation for trial would . . . seriously prolong the outcome of this suit in addition to consuming tremendous amounts of time, expenses and judicial resources." Sewell v. Bovis Lend Lease, Inc., 09 Civ. 6548 (RLE), 2012 WL 1320124 at *7 (S.D.N.Y. Apr. 16, 2012) (Ellis, M.J.). Moreover, "[l]itigating the claims of [more than 80] putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action." Sewell v. Bovis Lend Lease, Inc., supra, 2012 WL 1320124 at *7.

Second, discovery has advanced sufficiently to allow the parties to resolve the case responsibly. The parties have exchanged thousands of pages of documents, including tip sheets,

pay stubs, schedules, personnel files, employee handbooks and tax forms (Rumack Decl. ¶¶ 15-16). Additionally, the parties engaged in an hours-long mediation with an experienced, neutral, third-party mediator before reaching their settlement (Rumack Decl. ¶¶ 17-19). This factor further weighs in favor of preliminarily finding the settlement fair, adequate and reasonable. <u>Silverstein v. AllianceBernstein, L.P.</u>, 09 Civ. 5904 (JPO), 2013 WL 4713553 at *2 (S.D.N.Y. Aug. 27, 2013) (Oetken, D.J.); <u>Palacio v. E*TRADE Fin. Corp.</u>, 10 Civ. 4030 (RJH)(DCF), 2012 WL 1058409 at *1 (S.D.N.Y. Mar. 12, 2012) (Freeman, M.J.).

Third, plaintiffs would face real risks with respect to establishing liability and damages, as well as maintaining the class action, if the case proceeded to trial. Defendants have potentially strong defenses to plaintiffs' allegation that defendants misappropriated plaintiffs' tips. Specifically, while plaintiffs alleged that five individuals were not entitled to participate in the tip pool, defendants have provided information indicating that four of these individuals could legally participate in the tip pool (Pl.'s Mem., at 13). Additionally, defendants contend that their actions were not willful (Pl.'s Mem., at 11). Further, if this case were to continue to trial, defendants would likely contend that class certification would be inappropriate because determining liability and damages would require

individual determinations for each putative class member (Pl.'s Mem., at 11-12).

Fourth, defendants' ability to satisfy a greater judgment is unclear. "Even if [defendants] could have withstood a greater judgment, a 'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.-Y. 2013) (Ellis, M.J.), quoting Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005).

Fifth, the settlement fund represents a substantial percentage of plaintiffs' best possible recovery; given the risks of litigation, the amount of the settlement weighs in favor of approving the settlement. Plaintiffs' counsel has calculated that the putative class is owed at least $375,000.00 in misappro-priated tips (Rumack Decl. ¶ 22), and the total settlement amount is $342,500.00. After deducting the service awards and attor-neys' fees and costs, class members will receive approximately 50% of their claimed misappropriated tips. In light of the risks of litigation, this recovery weighs in favor of approving the settlement. Bodon v. Domino's Pizza, LLC, No. 09-CV-2941 (SLT), 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015) (Report & Recommen-dation) ("[T]he question [in assessing the fairness of a class action settlement] is not whether the settlement represents the

highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces . . . ." (internal quotation marks omitted)), <u>adopted</u> <u>sub</u> <u>nom</u>. <u>by</u>, <u>Bodon v. Domino's Pizza, Inc.</u>, 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); <u>Massiah v. MetroPlus Health Plan, Inc.</u>, No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing specula-tive payment of a hypothetically larger amount years down the road, settlement is reasonable . . . ." (internal quotation marks omitted; assessing fairness of class action settlement)).

Finally, the Settlement Agreement was reached after arm's-length negotiations between counsel, which included an hours-long mediation before a neutral, third-party mediator (Rumack Decl. ¶¶ 17-19). In light of counsels' experience and conduct in this action, I have no reason to doubt that the terms of the Settlement Agreement are fair, reasonable and adequate.[6]

---

[6]Although plaintiffs do not apply at this time for attor-neys' fees and costs, the claims administrator's costs or the service awards to the named plaintiffs, such items are routinely approved in this Circuit. <u>Lizondro-Garcia v. Kefi LLC</u>, <u>supra</u>, 300 F.R.D. at 180; <u>see</u> <u>Chavarria v. New York Airport Serv., LLC</u>, 875 F. Supp. 2d 164, 177-79 (E.D.N.Y. 2012); <u>Morris v. Affinity Health Plan, Inc.</u>, <u>supra</u>, 859 F. Supp. 2d at 622-24.

Accordingly, plaintiffs' motion for preliminary approval of the Settlement Agreement is granted.

## D. Plaintiffs' Proposed Notice

Plaintiffs also seek approval of the revised Proposed Notice accompanying their motion (Rumack Letter, Ex. B).[7] Pursuant to the Settlement Agreement, the settlement claims administrator will mail the Proposed Notice to each class member's last known address by first-class mail (Rumack Letter, Ex. A §§ 1.9, 2.4(B)). Additionally, if notices to any class members are returned as undeliverable, the claims administrator "shall take reasonable steps to obtain the correct address of such Class Member, including one skip trace, and shall attempt a re-mailing provided it obtains a more recent address" (Rumack Letter, Ex. A § 2.4(C)).

"Where, as here, the parties seek simultaneously to certify a settlement class and to settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement or dismissal)." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 448 (S.D.N.Y. 2004) (Lynch, then D.J., now Cir. J.);

---

[7]Counsel revised the Proposed Notice after I had a conference call with all counsel on August 15, 2017.

accord Gatto v. Sentry Servs., Inc., 13 Civ. 5721 (RMB)(GWG),
2014 WL 7338721 at *3 (S.D.N.Y. Dec. 19, 2014) (Berman, D.J.);
Shapiro v. JPMorgan Chase & Co., 11 Civ. 8331 (CM)(MHD), 11 Civ.
7961 (CM), 2014 WL 1224666 at *17 (S.D.N.Y. Mar. 24, 2014)
(McMahon, D.J.); In re Citigroup Inc. Sec. Litig., 965 F. Supp.
2d 369, 379-80 (S.D.N.Y. 2013) (Stein, D.J.).

Pursuant to Rule 23(c)(2)(B), "the court must direct
[that] class members [be provided with] the best notice that is
practicable under the circumstances, including individual notice
to all members who can be identified through reasonable effort."
See Fed.R.Civ.P. 23(e)(1) ("The court must direct notice in a
reasonable manner to all class members who would be bound by the
proposal."). The notice must describe:

> (i) the nature of the action; (ii) the definition of
> the class certified; (iii) the class claims, issues, or
> defenses; (iv) that a class member may enter an appear-
> ance through an attorney if the member so desires; (v)
> that the court will exclude from the class any member
> who requests exclusion; (vi) the time and manner for
> requesting exclusion; and (vii) the binding effect of a
> class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B).

I conclude that the process described by counsel for
providing notice to the class comports with Rule 23(c)(2)(B).

As to the form and content of the Proposed Notice, I
find that a majority of the Rule 23(c)(2)(B) requirements are

satisfied.  However, plaintiffs are directed to make the follow-
ing additional modifications to the Proposed Notice.

First, a bullet point should be added under the section
entitled "IMPORTANT DEADLINES" setting out the last date on which
a claim can be filed.

Second, the section entitled "DISMISSAL OF THE CASE AND
RELEASE OF CLAIMS" must be revised.  Section 4.1(A) of the
Settlement Agreement provides that "each individual Class Member,
who does not timely opt-out pursuant to this Agreement," will
release defendants and the other releasees "from all wage and
hour claims asserted, or wage and hour claims that could have
been asserted, under federal or state laws" (Rumack Letter, Ex. A
§ 4.1(A) (emphasis added)).[8]  However, the Proposed Notice cur-
rently states that only those class members who submit a claim
form and cash their checks will release their FLSA claims.  The
Proposed Notice is ambiguous on the claims class members who do
not submit a claim form would release; while the first paragraph
states that "all Class Members will fully release and discharge
Defendants from any wage or hour claims and/or state or local

_____

[8]While the second paragraph of the release specifically
provides that those class members who submit a claim form will
release their FLSA claims (Rumack Letter, Ex. A § 4.1(A)), the
language of the first paragraph, quoted above, is broad enough to
cover those class members who do not submit a claim form (Rumack
Letter, Ex. A § 1.7 (defining "Class Members")).

34

wage and hour laws," the second paragraph states that "Class
Members that do not submit a claim form will still release their
NYLL claims against Defendants." The Proposed Notice must be
revised to match the Settlement Agreement and consistently
provide that all class members who do not opt out, even those who
do not submit a claim form, will release claims under both the
FLSA and NYLL.

Third, I direct that the first bullet point under the
second paragraph of the section entitled "HOW WILL MY SHARE BE
CALCULATED IF I PARTICIPATE?" be revised to correctly state --
per Section 3.5(A) of the Settlement Agreement -- that "[e]ach
Class Member will be assigned one point for each week worked at
Nello from August 19, 2009 through July 28, 2017, the date the
settlement agreement was signed." This section should also
explain that no class member who timely and validly submits a
claim form will receive less than $100.00.

Fourth, I direct that the second paragraph of the
section entitled "UNCASHED CHECKS" be revised to correctly state
-- per Section 4.1(A) of the Settlement Agreement -- that an
Authorized Claimant's "release of all FLSA and NYLL claims will
still be effective" if the Authorized Claimant does not cash his
or her settlement check.

IV. Conclusion

    Accordingly, for all the foregoing reasons, plaintiffs' motion is granted. It is hereby ORDERED that:

    1. The proposed class is conditionally certified pursuant to Rule 23(a) and (b)(3). Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis Lopez are appointed class representatives and the Klein Law Group, P.C. is appointed class counsel.

    2. The Settlement Agreement is approved preliminarily.

    3. Counsel shall submit a proposed revised notice to class members to my chambers no later than September 22, 2017.

    4. Within 15 days of the date of this Order, defendants will provide the settlement claims administrator and plaintiffs' counsel with a list, in electronic form, of the (1) names, (2) last known addresses, (3) dates of employment and (4) social security numbers of each class member.

    5. Within 40 days of the final approval of the notice to class members, the settlement claims administrator shall mail, via first class mail, the revised

notice to the members of the class using each individual's last known address.

6.  Class members will have 45 days from the date the revised notice is mailed to file a claim form, opt out of the settlement or file written objections.

7.  The Court shall hold a fairness hearing on January 19, 2018 at 10:00 a.m. at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 18-A, New York, New York 10007.

8.  No later than January 3, 2018, counsel for plaintiffs shall move and file a memorandum of law in support of final approval of the Settlement Agreement, an award of attorneys' fees and costs and service awards.

9.  The Clerk of the Court is respectfully requested to close Docket Items 58 and 66.

Dated:  New York, New York
        September 1, 2017

                                SO ORDERED

                                _____
                                HENRY PITMAN
                                United States Magistrate Judge

Copies transmitted to:

All Counsel of Record