Darren P.B. Rumack
THE KLEIN LAW GROUP
39 Broadway Suite 1530
New York, NY 10006
Phone: 212-344-9022
Fax: 212-344-0301

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALEXANDRU SURDU, DINO TITO, ANASTASIA MAYFAT, CIPRIAN GROSU, and LUIS LOPEZ,** on behalf of themselves and those similarly situated, | **INDEX NO. 15-cv-6567 (PGG)** |
| **Plaintiffs,** | |
| - against - | |
| **MADISON GLOBAL LLC, d/b/a NELLO, NELLO BALAN, and THOMAS MAKKOS,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF THE**
**SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT,**
**APPROVAL OF THE FLSA SETTLEMENT, APPROVAL OF ATTORNEYS' FEES and**
**PLAINTIFF SERVICE AWARDS**

## Table of Contents

TABLE OF AUTHORITIES ............................................................................... II

INTRODUCTION ............................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................... 1

SUMMARY OF THE SETTLEMENT AGREEMENT .................................... 3

ARGUMENT ....................................................................................................... 4

    I.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ........................................... 4
    II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED ......... 5
        a.    The Settlement is Procedurally Fair ........................................... 5

        b.    The Settlement is Substantively Fair and Meets the Grinnell Standards for Class Action Settlement Approval ........................................... 6

    III.   THE PROPOSED FLSA SETTLEMENT SHOULD BE APPROVED ................................ 11
    IV.   CLASS COUNSEL'S REQUESTED ATTORNEY'S FEES AND CLAIMS ADMINISTRATOR FEES SHOULD BE APPROVED ............ 12
        a.    The Proposed Fee Is Reasonable Under The Six Goldberger Factors ................... 12

        b.    The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund ........................................... 18

        c.    Claims Administrator's Fees Should Be Approved ................................ 20

    V.   THE SERVICE AWARDS TO THE NAMED PLAINTIFFS SHOULD BE APPROVED ........................ 20

CONCLUSION .................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 PAC, 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) .................................................................................................................................. 11

*Apolinar v. Glob. Deli & Grorcery, Inc.*, No. 12 Civ. 3446, 2013 WL 5408122 (E.D.N.Y. Sept. 25, 2013) ............................................................................................................................. 24

*Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. 2014) .................................................................................................................................. 12

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .................................... 17, 20, 21, 23

*Cagan v. Anchor Saving Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ....................................................................................................................................... 12

*Chen v. TYT E. Corp.*, No. 10 Civ. 5288, 2013 WL 1903735 (S.D.N.Y. May 8, 2013) .............. 24

*D'Amato v. Watman*, 236 F.3d 78 (2d Cir. 2001) ............................................................................ 5

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4492 2015 WL 2255394 (S.D.N.Y. May 7, 2015) ......................................................................................................................................... 9

*Febus v. Guardian First Funding Grp., LLC*, 870 F.Supp. 2d 337 (S.D.N.Y. 2012) ................... 16

*Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ....... 22, 26

*Frank v. Eastman Kodak Co.*, 228 F.R.D 174 (W.D.N.Y. Apr. 29, 2005) ....................... 12, 13, 22

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) ........................................ 15

*Grinnell. City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................... 7, 13

*Guzman v. Joesons Auto Parts*, 11 Civ. 4543, 2013 WL 2898154 (E.D.N.Y. June 13, 2013) ... 19

*Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792 (S.D.N.Y. Oct. 19, 2005) ............... 18, 21, 23

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............... 8

*In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 697124 (S.D.N.Y. Nov. 9, 2015) ......................................................................................................... 20

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ............................ 20

*In re Lloyd's Am. Trust Fund Litig.*, No 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ....................................................................................................................................... 20

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ................................................................................................................................. 23

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y.1997) ..................................... 10

*In re Telik, Inc. Sec. Litig.*, 576 F.Supp. 2d 570 (S.D.N.Y. 2008)................................................. 5

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................................... 9

*Jemine v. Dennis,* 901 F.Supp. 2d, 365 (E.D.N.Y. 2012)............................................................. 17

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .............. 26

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. 2014).............................................. 7, 21

*Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358 (S.D.N.Y. 2002) .......................... 8, 21, 23

*Manley v. Midan Rest. Inc.*, No. 14 CIV. 1693 (HBP), 2017 WL 1155916 (S.D.N.Y. Mar. 27, 2017) ........................................................................................................................................... 21

*McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL2399328 (S.D.N.Y. Mar. 3, 2010) ....................................................................................... 14

*Mills v. Capital One*, 14 Civ. 1937, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) .. 5, 6, 7, 14, 20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................. 12

*Palacio v. E\*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ......................................................................................................................................................... 10

*Patino v. Brady Parking, Inc.*, 11 Civ. 3080, 2015 WL 2069743 (S.D.N.Y. Apr. 30, 2015)....... 23

*Raniere v. Citigroup Inc.* 310 F.R.D. 211 (S.D.N.Y. 2015) .................................................. passim

*Sakiko Fujiwara v. Sushi Yasuda, Ltd.*, 58 F.Supp. 3d 424 (S.D.N.Y. 2014) .......................... 9, 23

*Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)........................ 22

*Sewell v. Bovis Lend Lease Inc.*, No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ......................................................................................................................................................... 22

*Silverstein v. AllianceBernstein, L.P.,* No. 09 Civ 5904, 2013 WL 4713553 (S.D.N.Y. Aug. 27, 2013) ........................................................................................................................................... 10

*Slomovics v. All for a Dollar Inc.*, 906 F.Supp. 146 (E.D.N.Y. 1995) ........................................... 8

*Sukhnandan v. Royal Health Care of Long Is. LLC*, No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ............................................................................................................ 6

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2012 WL 3878144 (S.D.N.Y. Aug. 6, 2012) .................................................................................................................................................... 24

*Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ...... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................................... 5

*Westerfield v. Wash. Mut. Bank*, No. 06 Civ. 2817, 2009 WL 6490084 (E.D.N.Y. June 26, 2009) .................................................................................................................................................................. 10

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .................................................................................................................................................... 14

**Statutes**

29 U.S.C. § 216(b) .................................................................................................................... 14

Fed R. Civ. P. 23(e) ..................................................................................................................... 5

Fed. R. Civ. P. 23(a) .................................................................................................................... 5

## INTRODUCTION

Plaintiffs Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis Lopez (collectively "Plaintiffs") submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, Approval of Attorneys' Fees and Plaintiff Service Awards ("Plaintiffs' Motion for Final Approval"). The parties' settlement in the amount of Three Hundred and Forty-Two Thousand Five Hundred Dollars ($342,500.00) satisfies all of the criteria for final approval.

Plaintiffs respectfully seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement attached as Exhibit A to the Declaration of Darren Rumack in Support of Plaintiff Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of the FLSA Settlement ("Rumack Decl."); (3) approving the FLSA settlement; and (4) approving attorneys' fees, class administrator fees and service awards. Defendants do not oppose this motion.

On September 1, 2017, the Court took the first step in the settlement approval process by granting preliminary approval, directing notice be mailed to Class Members and setting the date for the final fairness hearing. Rumack Decl. ¶ 28. Class Members have been notified of the terms of the settlement, the monetary relief and allocation formula, and their right to opt out of, or object to the settlement. *Id.* at ¶ 29, Ex. B. No Class Member has objected to the settlement. *Id.* at ¶ 32, Ex. C. As a result, Plaintiffs respectfully request the Court grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Procedural History

Plaintiffs filed this Complaint on August 19, 2015 seeking damages for unpaid wages under the New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA"). *Id.* at ¶ 3. Specifically, Plaintiffs allege, amongst other claims, that (1) Defendants unlawfully paid Plaintiffs and the putative class less than minimum wage for each hour worked in violation of the NYLL and FLSA; (2) Defendants violated the rules and regulations governing the distribution of tips and implementation of the tip credit; and (3) Defendants illegally retained portions of Plaintiffs' tips, and failed to pay Plaintiffs and the putative class members tips they were owed under the NYLL. *Id.* at ¶ 4. On December 12, 2015, the parties stipulated that opt-in forms would be sent solely to current and former tipped employees holding the position of server, runner, bartender and/or busser paid at a tip credit rate, employed by Nello between September 21, 2012 and December 1, 2015. *Id.* at ¶ 6. Plaintiffs filed an Amended Complaint on May 10, 2016, which added retaliation claims on behalf of Plaintiffs Surdu and Tito. *Id.* at ¶ 8. Defendants filed its Answer on May 31, 2016 denying the allegations in the Complaint regarding the underpayment of wages and retaliation claims. *Id.* at ¶ 9.

## II.     Discovery and Settlement Negotiations

The parties have engaged in extensive discovery, including the production of time sheets, payroll records, tip sheets and salary information for the 5 named Plaintiffs and 10 opt-in Plaintiffs. *Id.* at ¶ 11. On September 16, 2016, the parties mediated this case before Ralph S. Berger, an experienced wage and hour mediator. *Id.* at ¶ 17. During the mediation, Defendants strenuously argued that the Class Members were properly compensated and the tip pool was lawful. *Id.* at ¶ 55. After several hours of contested negotiations, the parties reached an agreement in principle to a class-wide settlement of $342,500.00. *Id.* at ¶ 20.

## III.    CAFA Notice

2

Defendants sent required notices under the Class Action Fairness Act ("CAFA") on or around December 29, 2016.

## SUMMARY OF THE SETTLEMENT AGREEMENT

### I.      The Settlement Fund

The Settlement Agreement creates a common fund in the amount of Three Hundred and Forty-Two Thousand Five Hundred Dollars ($342,500.00), which includes attorneys' fees and expenses and enhancement fees for the named Plaintiffs.[1]  Rumack Decl., Ex. A ("Settlement Agreement") § 3.1(A).  The settlement agreement includes awards to putative class members, service awards to named plaintiffs, attorneys' fees, and reasonable Class Administrator fees. *Id.* at §§ 2.2(B), 3.3(A), 3.4(A), 3.5(A).

### II.     Eligible Employees

The settlement consists of all persons who work or have worked at Nello Restaurant, located at 696 Madison Ave, New York, NY 10065, between August 19, 2009 through September 1, 2017, as tipped servers, runners, bussers and bartenders.[2]

### III.    Releases

Class members who do not timely opt out of the Settlement Agreement will release Defendants from all wage and hour claims under the FLSA and NYLL.

### IV.     Allocation Formula

After the allocation of Court-approved attorneys' fees, Claims Administrator's fees and the Court-approved service fees, the amount remaining from the Net Settlement Fund ("Fund") will be divided among Class Members based on an allocation formula as follows:

---

[1] As part of the settlement agreement, the named Plaintiffs also signed general releases in exchange for $1500.00 each as consideration from which no attorneys' fees are deducted.
[2] Individuals who meet this definition, but who have released all claims against defendants as a result of settlements in cases bearing docket numbers 09-cv-9940 (PAC) (S.D.N.Y.) and 12-cv-3060 (JPO) (S.D.N.Y.) are excluded from this Class and are not eligible to participate in this settlement.

- Each Class Member will be assigned one point for each week worked at Nello from August 19, 2009 through September 1, 2017.
- The Claims Administrator will then divide the total number of points for each Authorized Claimant by the total number of points for all Class Members to determine each Authorized Claimant's portion of the Fund.
- No Authorized Claimant who timely and validly submits a claim form shall receive less than $100.00.

## V.     Attorneys' Fees, and Service Awards

Class Counsel requests an attorneys' fee in the amount of $114,166.66 and payment of service awards to the five (5) named plaintiffs in the amount of $8500 each. *Id.* at §§ 3.3(A), 3.4(A).

## VI.    Settlement Claims Administrator

The parties have retained Analytics LLC ("Analytics"), a third party wage and hour claims administrator to administer the settlement. On October 17, 2017, Analytics mailed the Court-approved Notice to 158 Class Members, whose names and addresses were provided by Defendants. *See* the Declaration of Michelle J. Kopperud ("Kopperud Decl.") ¶ 8; attached as Exhibit "C". The Class Members were given the opportunity to exclude themselves from, or object to the settlement. After the Notices were mailed, Analytics received 31 notices packets returned as undeliverable, and they were able to locate 5 updated addresses for remailing. *Id.* at ¶ 9. Eight (8) class members excluded themselves from the settlement. *Id.* at ¶ 10.

## ARGUMENT

## I.     The Settlement Class Should Be Certified

Under Rule 23, a class action may be maintained if all requirements of Rule 23(a) are met, as well as one of the requirements of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

4

common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). For the reasons set forth in Plaintiffs' preliminary approval papers and by the Court in Preliminarily Certifying the Class, the Class has been properly certified for settlement purposes. *See* ECF Documents Nos. 67, 73.

## II.   The Proposed Settlement Is Fair, Reasonable and Adequate and Should Be Approved

Rule 23 requires judicial approval of any compromise of claims brought on a class basis. "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed R. Civ. P. 23(e); *D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001). Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 575 (S.D.N.Y. 2008).

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that led to the settlement and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). While there is a general policy favoring settlements, the court may approve a class action settlement only if it "is fair, adequate, and reasonable, and not a product of collusion." *Mills v. Capital One*, 14 Civ. 1937, 2015 WL 5730008, at *3 (S.D.N.Y. Sept. 30, 2015). This requires "consideration of both procedural and substantive fairness." *Id.*

### a.   The Settlement is Procedurally Fair

There is a presumption of "fairness, reasonableness, and adequacy as to the settlement where 'a class settlement is reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery.'" *Id.*

5

The settlement in this case is procedurally fair, because the agreement was reached after Class Counsel conducted a thorough investigation of the claims and defenses in the case. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate and not a product of collusion' after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator). In this case, this investigation included Class Counsel reviewing around 3500 pages of documents in discovery, evaluating the strengths and weaknesses of the claims prior to engaging in a day-long mediation session with mediator Ralph S. Berger, who is a well-known mediator in wage and hour law. Rumack Decl. ¶ 17; *see Sukhnandan v. Royal Health Care of Long Is. LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *4 (S.D.N.Y. July 31, 2014) ("[t]he Parties' arm's-length negotiations involved counsel and a professional mediator, raising a presumption that the settlement achieved the requirements of due process"); *Mills*, 2015 WL 5730008, at *4 (settlement was procedurally fair where the parties were represented by experienced counsel and the settlement was the by-product of mediation before an experienced employment law mediator).

### b. The Settlement is Substantively Fair and Meets the *Grinnell* Standards for Class Action Settlement Approval

In evaluating a class action settlement, courts in the Second Circuit consider the nine-factor test set forth in *Grinnell*. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 178–79 (S.D.N.Y. 2014).

The *Grinnell* factors are: 1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

6

(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* In this case, these factors weigh in favor of final approval of the Settlement Agreement.

### i. Factor 1: Litigation Through Trial Would Be Complex, Costly and Long

Litigating this case through trial would be complex, costly and lengthy. Most class actions are "inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). Given the fact intensive nature of this matter, this case would be no exception. While significant discovery has been conducted in this matter, additional discovery, including depositions of all parties, as well as opt-in plaintiffs would be required. Defendants would likely oppose any motions for class certification. Preparing this matter for trial and then presenting at trial would be time consuming and costly. Further, any judgment is likely to be appealed, which would extend the duration of the litigation and final closure for all parties. In contrast, the settlement offers monetary relief to approximately 158 class members in a prompt and efficient manner. As a result, the first *Grinnell* factor weighs in favor of approval.

### ii. Factor 2: Reaction By The Class Has Been Positive

The reaction of the class to the settlement is "perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of the settlement." *Slomovics v. All for a Dollar Inc.*, 906 F.Supp. 146, 150 (E.D.N.Y. 1995). "The fact that the vast majority of class members neither objected nor opted

out is a strong indication of fairness." *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4492 2015 WL 2255394, at *4 (S.D.N.Y. May 7, 2015). Here, the named Plaintiffs have expressed approval of the settlement, all named Plaintiffs have signed the settlement agreement and Class Counsel has received positive feedback from several class members who have submitted claim forms. Rumack Decl. ¶ 31. No Class Members have objected to the settlement. *Id.* at ¶ 32. Therefore, this factor weighs in favor of final approval.

### iii. Factor 3: Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case

The parties have conducted sufficient discovery to responsibly settle this case. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Sakiko Fujiwara v. Sushi Yasuda, Ltd.*, 58 F.Supp. 3d 424, 433 (S.D.N.Y. 2014) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

Here, the parties exchanged thousands of documents, including time records, tip sheets, employee handbooks and personnel files. *Id.* at ¶¶ 15-16. Both parties were able to use and evaluate this information in order to assess the strengths and weaknesses of their cases prior to and during the mediation which led to this tentative agreement, and to properly evaluate potential damages. Further, the assistance of an experienced class action mediator reinforces that the Settlement Agreement is non-collusive. *See, e.g., Silverstein v. AllianceBernstein, L.P.*, No. 09 Civ. 5904, 2013 WL 4713553, at *2 (S.D.N.Y. Aug. 27, 2013); *Palacio v. E\*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012); *Westerfield v. Wash. Mut. Bank*, No. 06 Civ. 2817, 2009 WL 6490084, at *1 (E.D.N.Y. June 26, 2009). This factor weighs in favor of settlement approval.

### iv. Factor 4 and 5: Plaintiffs Would Face Real Risks If The Case Proceeded To Trial

While Plaintiffs believe their case is strong, there are still risks involved in any litigation. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.1997) ("[L]itigation inherently involves risks). "In weighing the risks of establishing liability and damages, the Court 'must only weigh the likelihood of success by the Plaintiff class against the relief offered by the settlement.'" *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014).

Given the fact-intensive nature of the claims in this case, a trial would involve significant risks for Plaintiffs. For example, one of the major issues of contention was whether specific employees in the tip pool were entitled to lawfully take tips. At trial, Defendants would argue that the nature of these employees' job duties means that they had sufficient customer interaction and lack of supervisory authority to be lawful participants in the tip pool. Even if successful on this matter, Plaintiffs would then have to litigate the issue of whether these violations were willful, or not in good faith in order to receive liquidated damages. Further, in discovery, Defendants produced written wage notices as required by the NYLL, which they maintain satisfy the tip credit notice requirement. Finally, Defendants maintain that the required uniforms at issue were regular day-to-day street clothes that would not be considered uniforms that require reimbursement from the employer.

Clearly, these issues would be heavily contested, and require substantial fact-intensive discovery. Although Plaintiffs believe in the merits of their case, these difficult and uncertain issues are alleviated by reaching this settlement, meaning this factor weighs in favor of preliminary approval.

### v. Factor 6: Establishing And Maintaining A Class Through Trial Would Be Risky

9

Obtaining class certification and maintaining it through trial is risky. *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 PAC, 2014 WL 5794655, at *4 (S.D.N.Y. Nov. 4, 2014) ("[T]he risk of obtaining collective and class certification and maintaining both through trial is also present. Settlement eliminates the risk, expense, and delay inherent in the litigation process"). Here, the Court has not certified a class under Rule 23, and Defendants would likely vigorously oppose any motion, arguing that individual questions preclude class certification (such as tip credit notices and differing job duties of class members). Defendants would likely appeal if the class was certified, meaning further risk, expenses and delay in resolving this case. Therefore, settlement alleviates this risk.

### vi. Factor 7: It Is Not Guaranteed That Defendants Could Withstand A Greater Judgment

It is not clear whether the Defendants could withstand a greater judgment; however, Defendants' ability to do so, "standing alone, does not suggest that the settlement is unfair," *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *2 (S.D.N.Y. 2014); *Frank v. Eastman Kodak Co.*, 228 F.R.D 174, 186 (W.D.N.Y. Apr. 29, 2005). Therefore, this factor does not preclude the Court from granting settlement approval.

### vii. Factor 8 and 9: The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Risks Of Litigation

The $342,500.00 settlement represents a substantial value given the aforementioned litigation risks. Indeed, the settlement represents a significant recovery of what Plaintiffs could have achieved had they prevailed on all claims. It is well settled that a settlement amounting to "only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *Cagan v. Anchor Saving Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at * 13 (E.D.N.Y. May 22, 1990)

(approving a $2.3 million class settlement over objections that the best possible recovery would be approximately $121 million).

Further, the determination of a reasonable settlement amount "does not involve the use of a mathematical equation yielding particularized sum." *Frank*, 228 F.R.D at 186. There is a range of reasonableness with respect to a settlement, a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. *Id.* When settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement is reasonable under this factor. *Gilliam*, 2008 WL 782596, at *5. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinell*, 495 F.2d at 455 n.2.

Here, the settlement provides a significant recovery for the Class, including recovering 91.33% of the allegedly misappropriated tips in the gross settlement. Each Class Member will receive a payment based upon the number of weeks worked for Defendants during the relevant period. Finally, when weighing the benefits of the settlement against the available evidence and inherent risks involved in litigating this case, the settlement amount is reasonable. As a result, these factors weigh in favor of issuing final approval of the Settlement Agreement.

### III.    The Proposed FLSA Settlement Should Be Approved

Plaintiffs further request that the Court approve the settlement and release of the FLSA claims. FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation. 29 U.S.C. § 216(b). FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See McMahon v. Olivier Cheng Catering & Events,*

11

*LLC*, No. 08 Civ. 8713 (PGG), 2010 WL2399328, at *6 (S.D.N.Y. Mar. 3, 2010). "A FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement agreement reflects a fair and reasonable compromise of disputed issues that was reached as a result of a contested litigation. *Mills v. Capital One,* 2015 WL 5730008, at *7. The adversarial nature of an FLSA action is typically a sufficient indication of a settlement's fairness. *Id.* Further, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Id.*

Here, the settlement reflects a very good result for the class members, and is the result of a vigorously contested litigation and extensive arm's-length negotiations, and is therefore appropriate for final approval. *See Yuzary v. HSBC Bank USA, N.A.,* No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *8 (S.D.N.Y. Oct. 2, 2013) (approving FLSA settlement where it was the result of arm's-length negotiation involving "vigorous back and forth" by counsel experienced in wage and hour law). As discussed, the Settlement Agreement resolves actual bona-fide disputes under circumstances supporting a finding that this is a fair and reasonable arm's-length settlement and is therefore appropriate for final approval.

## IV. Class Counsel's Requested Attorney's Fees And Claims Administrator Fees Should Be Approved

### a. The Proposed Fee Is Reasonable Under The Six *Goldberger* Factors

The Second Circuit has outlined six factors to consider when determining the reasonableness of a fee application: (1) the time and factor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and, (6) public policy considerations. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). These factors weigh in favor of approval of the requested fee award.

12

### i. Factor 1: Class Counsel's Time and Labor

Since being retained on this matter, Class Counsel (or "KLG") has spent considerable time and effort in the prosecution of this case in order to achieve this settlement. To date, KLG has spent 102.06 hours on this litigation, as reflected in the contemporaneous time records.[3] *See* Rumack Decl. ¶ 39. Although not initially retained, KLG did substantial work upon being retained in this matter, including meeting with the named Plaintiffs and their former counsel to review the case status, filing an Amended Complaint, and conducting formal discovery including drafting document requests and interrogatories, as well as overseeing document production and conducting damage calculations in preparation for substantive settlement discussions. *Id.* at ¶ 12.

Ahead of the mediation, Plaintiffs prepared a mediation statement and further damage calculations. *Id.* at ¶ 19. Following the exchange of discovery requests and review of the extensive document production, which included payroll, schedules, tipsheets and dry cleaning receipts, the parties engaged in informal settlement discussions prior to reaching the settlement agreement in mediation. *Id.* at ¶¶ 15-16.

Finally, Class Counsel anticipates spending additional time in the future preparing for the fairness hearing and administering the settlement, and the requested fee award is also meant to compensate for that time. *Id.* at ¶ 42. As well, Class Counsel has prepared motions for preliminary and final approval. Therefore, the first factor weighs in favor of approval.

### ii. Factor 2: The Magnitude and Complexity of the Litigation

---

[3] On May 4, 2016, KLG substituted Mr. Freedberg as counsel of record for Plaintiffs, which was endorsed by the Court on May 10, 2016. See ECF Nos. 37, 39. Mr. Freedberg and KLG formally cooperated on the transfer of this case, and KLG was fully briefed on all facts, outstanding documents and discovery and met with several of the named Plaintiffs prior to being formally retained as counsel. Mr. Freedberg billed an estimated 54.15 hours on this file. *See* Rumack Decl. ¶ 43.

The second factor weighs in favor of settlement approval. Hybrid FLSA and state wage-and-hour cases are often large and complex. *See Febus v. Guardian First Funding Grp., LLC,* 870 F.Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[C]ourts have recognized that FLSA cases are complex and that '[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt' out class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action...'"). This case was no different, as it consisted of multiple job positions in an FLSA collective action and NYLL state class action, which covered 158 individuals. *See Jemine v. Dennis,* 901 F.Supp. 2d, 365, 392 (E.D.N.Y. 2012) ("[I]n a class action suit, as here, the large number of plaintiffs increases the complexity of the litigation").

FLSA claims typically involve "complex mixed questions of fact and law." *Raniere,* 310 F.R.D. at 221. Here, this case involved numerous complicated questions of fact and law, including whether: (1) specific employees (including cashiers and employees who worked in various positions in the restaurant) were tipped employees for the purposes of the restaurant tip pool; (2) whether Defendants failed to provide accurate record keeping and whether Defendants availed themselves of the oral and written requirements to take a tip credit, and (3) if such failure to provide proper notice invalidated the tip credit altogether.

### iii.  Factor 3: The Risk of the Litigation

Contingency risk is the "principal ... factor courts should consider in their determination of attorneys' fees." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 479 (S.D.N.Y. 2013). Here, Class Counsel "faced unique risks on the merits of the claim[s]" and faced "significant risk associated with class certification under Rule 23 because of the question of whether the Plaintiffs' job duties were sufficiently similar. *Id.* at 479-80. In contingency cases, "the

attorneys take upon themselves the risk that the litigation will not be successful, including the risks of non-reimbursed expenditures and the opportunity cost of attorney time dedicated to the case." *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 19, 2005).

The underlying claims in this action are risky to litigate, because the primary source of proof is the plaintiffs' own self-serving testimony. For example, the most significant portion of claimed damages is misappropriated tips. Rumack Decl. ¶ 23. However, whether specific employees are eligible to participate in the tip pool is a factual question. *Id.* In order to prove that specific employees were ineligible to participate in the tip pool, either because they were managerial employees, or their job positions did not have sufficient customer interaction, Plaintiffs would have to rely on their own testimony and documents, as well as hours of depositions of the employees in question. Ultimately, the facts are subjective, and a judge or jury may rule either way. If any of these employees were found to be eligible to receive tips, the potential damages would decrease considerably.

Further, Defendants argue that Plaintiffs and the putative class are not entitled to liquidated damages as Defendants acted willfully and made a good-faith attempt to comply with the law. If the Court agreed with Defendants, liquidated damages would not be assessed and Plaintiffs' recovery would lessen further. Finally, Class Counsel faced the risk that the Court would not grant conditional certification under the FLSA, or class certification under Rule 23, thereby risking any attempt at a class-based recovery.

In light of these issues, this factor again weighs in favor of approval of the requested fee award. *Raniere v. Citigroup Inc.* 310 F.R.D. 211, 221 (S.D.N.Y. 2015) ("Class Counsel [has] obtained a large settlement for the Plaintiffs despite significant questions...about whether they can make the legal and factual showing necessary to prevail.").

15

### iv.  Factor 4: The Quality of the Representation

To determine the quality of the representation, courts review, among other things, "the recovery obtained and the background of the lawyers involved in the lawsuit." *Guzman v. Joesons Auto Parts,* 11 Civ. 4543, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013). Here, Class Counsel on this case obtained a large recovery for the Plaintiffs. The settlement amount of $342,500.00 represents an amount that recovers over 90% of the allegedly misappropriated tips. *See* Rumack Decl. ¶ 23.

Class Counsel is an experienced employment law attorney, with substantial experience litigating wage and hour cases, including single plaintiff, multi-plaintiff and class actions under the FLSA and NYLL.  Darren P.B. Rumack graduated from Vanderbilt University Law School in 2007, and has been practicing employment law since graduation.  From 2007 through 2010, Mr. Rumack worked at Fox Rothschild LLP, representing employers primarily on wage and hour class and collective actions, with a particular focus on cases in the restaurant industry.  Since 2010, Mr. Rumack has worked at The Klein Law Group P.C. as the sole full-time employment litigation attorney (and as a partner since early 2016), representing primarily employees in both single plaintiff, and multi-plaintiff and collective action wage and hour cases.  To date, Mr. Rumack is counsel of record in nearly seventy (70) cases in the S.D.N.Y. and E.D.N.Y.

Xian-Ming Lei graduated from University of Illinois Champaign Urbana College of Law in 2009, and has been practicing employment law since 2011. From 2009 through 2010, Mr. Lei worked as an intern at Public Defender's office in Champaign County, IL, and an intern at Juvenile Defender's office in Durham County, NC, assisting public defenders in various domestic violence and juvenile delinquency cases. Since 2011, Mr. Lei has worked as an associate at The Klein Law Group, P.C.

16

Finally, "the quality of opposing counsel is also important in evaluating the quality of Class Counsel's work." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Here, experienced employment-law litigators from Jackson Lewis represented Defendants.

Therefore, the fourth factor weighs in favor of approval of the requested fee, because Class Counsel obtained a large recovery for the Class and has significant experience litigating wage and hour cases.

### v. Factor 5: The Requested Fee in Relation to the Settlement

The fifth factor evaluates the reasonableness of the requested fee as a percentage of the common fund. The trend in this Circuit is to use percentage of the fund method to compensate attorneys in wage and hour class actions. *Beckman*, 293 F.R.D. at 477. A fee award of one-third of the Settlement Fund is "well within the range accepted by courts in this circuit." *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 697124, at *11 (S.D.N.Y. Nov. 9, 2015); *In re Lloyd's Am. Trust Fund Litig.*, No 96 Civ. 1262, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002).

Class Counsel is aware of this Court's jurisprudence regarding attorneys' fees in wage and hour cases. *See, e.g., Mills*, 2015 WL 5730008 ; *Lizondro-Garcia*, 2015 WL 4006896, at *4. However, this Court has also recently used the percentage of the fund method in a restaurant wage and hour case. *Manley v. Midan Rest. Inc.*, No. 14 CIV. 1693 (HBP), 2017 WL 1155916, at *8 (S.D.N.Y. Mar. 27, 2017) (using the percentage of the fund method "given the relatively small size of the settlement fund").

Here, as the settlement fund is relatively small, a one-third attorneys' fee would not constituted a windfall. *Id.; Hicks*, 2005 WL 2757792, at *9 ("a settlement amount of $10 million

does not raise the windfall issue in the same way as would a $100 million settlement, and a 30%
fee does not constitute a windfall").

Additionally, the fact that Plaintiffs agreed in their retainer agreements that the attorney's
fee would be one-third of any recovery provides support for the fee request. *Beckman,* 293
F.R.D. at 477-78. As does the fact that no Class Member objected to the fee request. *Id.*

In this case, the requested fee is one-third of the settlement fund and should be approved
by the Court.

### vi. Factor 6: Public Policy Considerations

In wage and hour class action lawsuits, public policy favors a common fund attorneys'
fee award. *Flores v. Anjost Corp.,* No. 11 Civ. 1531, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29,
2014); *Sewell v. Bovis Lend Lease Inc.,* No. 09 Civ. 6548, 2012 WL 1320124, at *13 (S.D.N.Y.
Apr. 16, 2012). Fee awards in wage and hour cases are meant to "encourage members of the bar
to provide legal services to those whose wage claims might otherwise be too small to justify the
retention of able, legal counsel." *Sand v. Greenberg,* No. 08 Civ. 7840, 2010 WL 69359, at *3
(S.D.N.Y. Jan. 7, 2010). The FLSA and state wage and hour statutes are remedial statutes, the
purposes of which are served by adequately compensating attorneys who protect wage and hour
rights. *Id.*

Given that a number of the class members worked at Nello for a short time, it is unlikely
that "without the benefit of class representation that they would be willing to incur the financial
costs and hardships of separate litigations." *Frank,* 228 FRD at 181.

### b. The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund.

Under *Goldberger,* Courts "cross check" the proposed attorney fee award by comparing
the requested amount to the amount due under the "lodestar" method. *See Raniere,* 310 F.R.D.

at 221. Here, KLG's requested fee of $114,166.66 is reasonable, because it is a multiplier of 2.83 times the lodestar amount.[4]    Rumack Decl. ¶ 43. Where the lodestar method is simply used as a "cross-check," the court does not need to scrutinize counsel's documentation of hours expended on the case in the same depth as is appropriate where the lodestar is used as the sole fee determination. *Hicks,* 2005 WL 2757792, at *10.

Further, this falls within the range of multipliers that courts in this district have allowed. *Beckman,* 293 F.R.D. at 481-82 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.") Indeed, the Southern District has held that a "multiplier of 2.09 is at the lower end of the range of multiplies awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig.,* No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); *Fujiwara,* 58 F. Supp. at 439 (awarding fee constituting 2.28 multiplier of modified lodestar calculation). In the wage and hour class action context, the court has held a multiplier of 4.65 to be reasonable. *Maley,* 186 F. Supp.2d at 371.

Plaintiffs are seeking an hourly rate of $400.00 for Mr. Rumack's work on this case, and $300.00 per hour for Mr. Lei's work, which is reasonable in this case. *See, e.g., Patino v. Brady Parking, Inc.,* 11 Civ. 3080, 2015 WL 2069743 at *3 (S.D.N.Y. Apr. 30, 2015) (awarding hourly rate of $400 to partner practicing thirteen years in area of labor and employment); *Torres v. Gristede's Operating Corp.,* No. 04 Civ. 3316, 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012) (awarding $500 per hour to partner with less than fifteen years of experience); *Chen v. TYT E. Corp.,* No. 10 Civ. 5288, 2013 WL 1903735, at *3 (S.D.N.Y. May 8, 2013) (finding $400.00 per hour to be reasonable rate for partner); *Apolinar v. Glob. Deli & Grorcery, Inc.,* No. 12 Civ 3446, 2013 WL 5408122, at *15 (E.D.N.Y. Sept. 25, 2013) (same).

---

[4] Factoring in the time billed by Mr. Freedberg, it is a multiplier of 1.80 times the lodestar amount.

Additionally, as this case was filed by Mr. Freedberg, KLG is not requesting the reimbursement of any costs or filing fees, which are normally requested along with the attorneys' fee.

### c. Claims Administrator's Fees Should Be Approved

Pursuant to Section 2.2(B) of the Settlement Agreement, Class Counsel requests that this Court approve the Claims Administrator's Fees in the amount of $5588.23. *See* Rumack Decl. ¶ 30; Exhibit C "Claims Administrator's Invoice."

### V.    The Service Awards To The Named Plaintiffs Should Be Approved

Pursuant to Section 3.4(A) of the Settlement Agreement, Class Counsel requests that this Court approve the service awards to the five named Plaintiffs in the amount of $8500.00 each. *See Id.* at ¶ 35; Exhibit A § 3.4(A). As explained by this Court:

> Incentive awards are not uncommon in class action cases and are within the discretion of the court.   In calculating incentive fees, courts consider: the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by the plaintiff in assisting in the prosecution of the litigation or in bring to bear added value (e.g. factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim and of course the ultimate recovery.
>
> The relevant inquiry is whether the particular case presents special circumstances justifying an incentive award… [Incentive] awards are particularly appropriate in the employment context.  In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.  Although there is no specific measure for determining when an incentive award is justified, courts consistently focus on the existence of "special circumstances."

*See Raniere,* 310 F.R.D. at 220 (approving various service awards amounts).

These "special circumstances" exist in this case.   Here, the named plaintiffs were instrumental in the commencement and prosecution of this matter, and devoted substantial time

and effort in the litigation. *See* Rumack Decl. at ¶ 36. The named plaintiffs, who work and continue to work in the restaurant and hospitality industry, took a significant risk that they would be "black-balled" by filing this case. *Raniere*, 310 F.R.D. at 220 ("[I]t takes courage for any employee to challenge [his or] her's employer's workplace practices..."); *Id.* The named plaintiffs took time away from their jobs and personal time to assist with the drafting of the Complaint, interrogatory responses and document requests, reviewing document production and then attending and assisting with and attending the mediation. *Id.* Their efforts were instrumental in the ultimate resolution and recovery in this case.

Further, the service awards requested are "roughly commensurate to service awards approved in similar class actions. *Id.* Here, plaintiffs request approval of service awards totaling $42,500.00 from a $342,500.00 settlement fund (12.4%), which is comparable to other cases. *See, e.g., Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (approving service awards totaling $40,000.00 from a $440,000.00 settlement fund); *Flores,* 2014 WL 321831, at * 9 (approving five service awards of $25,000.00 each from $1,050,000.00 settlement fund). The Class Notice form informed the putative Class Members that the service awards would be requested, and no Class Member has objected to the service awards. *See* Rumack Decl. at ¶¶ 38-39. Due to their time, assistance and development of the case, the named plaintiffs are appropriate and justified as part of the Settlement Agreement.

21

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the class and collective action settlement, and enter the proposed Order.

Dated:     New York, NY              Respectfully submitted,
              January 2, 2018

                                   THE KLEIN LAW GROUP PC

By:    _____

                                  Darren P.B. Rumack
                                  39 Broadway Suite 1530
                                  New York, NY 10006
                                  Phone: 212-344-9022
                                  Fax: 212-344-0301
                                  *Attorneys for Plaintiffs.*