UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

ALEXANDRU SURDU, DINO TITO,      :
ANASTASIA MAYFAT, CIPRIAN GROSU
and LUIS LOPEZ, on behalf of     :
themselves and those similarly
situated, et al.,                :

                    Plaintiffs,  :

      -against-                  :

MADISON GLOBAL, LLC, d/b/a       :
"Nello," Nello Balan and Thomas
Makkos,                          :

                    Defendants.  :

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/22/18.

15 Civ. 6567 (HBP)

OPINION
AND ORDER

          PITMAN, United States Magistrate Judge:


I.   Introduction

          Plaintiffs Alexandru Surdu, Dino Tito, Anastasia

Mayfat, Ciprian Grosu and Luis Lopez, on behalf of themselves and

all others similarly situated, commenced this action pursuant to

the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et

seq., and the New York Labor Law (the "NYLL") §§ 190 et seq.

against defendants Madison Global, LLC d/b/a "Nello" ("Nello"),

Nello Balan and Thomas Makkos to recover unpaid minimum wages,

misappropriated gratuities, uniform purchase and maintenance

costs and penalties for failure to provide wage statements and

notices. Plaintiffs brought the action as a collective action pursuant to 29 U.S.C. § 216(b) with respect to the FLSA claims and as a class action with respect to the NYLL claims. Following the filing of the complaint, opt-in plaintiffs Gulnaz Badakshanova, Constantine Haralabopolous, Bilguun Ganhuyag, Francesco Desideri, Gian Maria Montoro, Stefano Naia, Adnan Dibra, Susanna De Martino, Luca Federico and Juan Carlos Rios consented to join the FLSA collective action.

By letter to the Honorable Paul G. Gardephe, United States District Judge, dated September 30, 2016, the parties informed the Court that they had reached a settlement of the FLSA collective action and the NYLL class action (Letter from Noel P. Tripp, Esq. to Judge Gardephe, dated Sept. 30, 2016 (Docket Item ("D.I.") 49)). The parties subsequently memorialized their agreement in a written settlement agreement (the "Settlement Agreement"). All parties have consented to my exercising plenary jurisdiction pursuant to 18 U.S.C. § 636(c).

By notice of motion dated January 3, 2018 (D.I. 79), plaintiffs have moved for an order: (1) certifying the final settlement class (the "Settlement Class"); (2) approving the class action settlement; (3) approving the FLSA settlement; (4) awarding fees to class counsel; (5) granting service awards to named plaintiffs Alexandru Surdu, Dino Tito, Anastasia Mayfat,

Ciprian Grosu and Luis Lopez and (6) awarding fees to the claims administrator (Memorandum of Law in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, Approval of the FLSA Settlement, Approval of Attorney's Fees and Plaintiff Service Awards, dated Jan. 3, 2018 (D.I. 80) ("Pl. Memo.") at 1).

For the reasons set forth below, plaintiffs' motions are granted in part.

II.  Factual and
     Procedural History

The complaint alleges that members of the FLSA collective and NYLL class are or were employed by defendants as tipped "food service workers," which is defined as "servers, bussers, runners, and bartenders" (Class and Collective Action Complaint, dated Aug. 11, 2015 (D.I. 1) ("Compl.") ¶¶ 1, 18).[1]  Plaintiffs allege that defendants:  (1) failed to pay the minimum wage by improperly applying the FLSA and NYLL's tip credit allowance; (2) unlawfully retained portions of the food service workers' tips and distributed them to non-tip-eligible employees; (3) failed to

---

[1]The FLSA collective class includes waitstaff that worked for defendants on or after August 19, 2012, and the NYLL class includes waitstaff that worked for defendants on or after August 19, 2009 (Compl. ¶¶ 16, 25).

reimburse food service workers for uniform purchase and mainte-
nance costs and (4) failed to provide food service workers with
wage statements and notices as required by the New York Wage
Theft Prevention Act (Compl. ¶¶ 31-98).  Plaintiffs filed an
amended complaint on May 10, 2016, adding retaliation claims on
behalf of Surdu and Tito (Stipulation Regarding Plaintiffs'
Proposed Amendment of Complaint, dated May 9, 2016 (D.I. 38), Ex.
A ("Amended Compl.") ¶¶ 75-88, 113-33).

      The parties engaged in extensive discovery to develop
their claims and defenses.  Plaintiffs produced approximately
1,500 pages of documents, including tip sheets, pay stubs, work
schedules, employee handbooks, dry cleaning receipts, disciplin-
ary write-ups and tax forms (Declaration of Darren P.B. Rumack,
Esq., dated Jan. 3, 2018 (D.I. 81) ("Rumack Decl.") ¶¶ 14-15).
Defendants produced approximately 2,000 pages of documents,
including pay stubs, work schedules and personnel files for the
named and opt-in plaintiffs (Rumack Decl. ¶ 16).  According to
plaintiffs' calculations, the estimated tip credit damages for
the putative class members was approximately $376,609.99, exclu-
sive of liquidated damages (Rumack Decl. ¶ 22).  Plaintiffs have
not submitted any estimate of the class's other elements of
damages.

On September 16, 2016, the parties engaged in an arm's-length negotiation during a lengthy mediation session with mediator Ralph S. Berger, whom plaintiffs' counsel describes as an "experienced and well-known mediator" in wage-and-hour cases (Rumack Decl. ¶¶ 17-20). At the mediation, following "several hours of negotiations," the parties reached an agreement on a total settlement amount of $350,000.00 (Rumack Decl. ¶ 20). The parties thereafter negotiated the remaining terms of the settlement, which are memorialized in the Settlement Agreement (Rumack Decl. ¶ 24; Letter from Darren Rumack, Esq., to the undersigned, dated Aug. 25, 2017 (D.I. 72) ("Rumack Letter")).

The Settlement Agreement provides that defendants, without conceding the validity of plaintiffs' claims or admitting liability, agree to create a common settlement fund of $342,500.00 (Rumack Letter, Ex. A § 3.1(A)). From the settlement fund, Surdu, Tito, Mayfat, Grosu and Lopez will each receive an $8,500.00.00 service award and counsel for plaintiffs will receive no more than $114,166.66, or one-third of the total settlement amount, in attorneys' fees and costs, subject to the Court's approval (Rumack Letter, Ex. A §§ 1.10, 2.2(B), 3.3(A), 3.4(A)).

The Settlement Agreement provides that the claims administrator will allocate the remainder of the settlement

proceeds to those class members who validly file a claim form

("Authorized Claimants") as follows:

> (2)  All Class Members will receive one point for each week worked for Nello between August 19, 2009 and the date [the] Agreement is signed[.]
>
> (3)  The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Class Members during the period of August 19, 2009 through the date this Agreement is signed ("Point Value").
>
> (4)  Each Authorized Claimant's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.
>
> (5)  No Authorized Claimant shall receive less than $100.00.  If any Authorized Claimant's Individual Settlement Amount under this formula is less than $100.00, that Authorized Claimant's Individual Settle-ment Amount will be increased to $100.0[0], with the difference subtracted from the Net Settlement Fund, and all other Authorized Claimants' Individual Settlement Amounts recalculated according to the formula set forth above to account for the difference.

(Rumack Letter, Ex. A §§ 1.2, 3.5(A)).  Any portion of the net

settlement amount not claimed by class members will revert to

defendants (Rumack Letter, Ex. A § 3.5(B)).  For tax purposes,

33% of the settlement checks paid to class members will be

reported to the IRS as W-2 wage payments and 67% will be paid as

1099 non-wage payments for interest, liquidated damages and

statutory penalties (Rumack Letter, Ex. A § 3.6(A)).

Additionally, the Settlement Agreement provides that

upon final approval of the Settlement Agreement, each individual

who does not opt out of the class, including those who do not submit a claim form, will release defendants from all wage-and-hour claims that were brought, or could have been brought, in this action through the date of this Order (Rumack Letter, Ex. A §§ 1.28, 4.1(A)).

The Settlement Agreement also provides that neither side shall make any statement to the media about the settlement, other than "'[t]he matter has been resolved'" (Rumack Letter, Ex. A § 4.2(B)).

Finally, the Settlement Agreement provides that either party has the right to terminate the Settlement Agreement if I decline to approve the Settlement Agreement, except if the denial is solely due to attorneys' fees (Rumack Letter, Ex. A § 2.8(A)). Additionally, defendants have the right to terminate the Settlement Agreement if ten percent or more of the putative class members opt out (Rumack Letter, Ex. A § 2.8(B)).

On September 1, 2017, I conditionally certified the NYLL class, appointed Klein Law Group, P.C. as class counsel, preliminarily approved the Settlement Agreement and authorized the notice of settlement (with modifications) to all putative class and collective members (Opinion and Order, dated Sept. 1, 2017 (D.I. 73) ("Preliminary Approval Order") at 36).

Pursuant to the Preliminary Approval Order, the claims administrator sent the approved notice to all putative class members on October 17, 2017, informing them of (1) their rights under the settlement (including the right to opt out of or object to the settlement); (2) class counsel's intention to seek one-third of the settlement fund for attorneys' fees and costs; (3) the request for a service award to named plaintiffs; (4) the claims administrator's fees and (5) the manner in which the remainder of the fund would be distributed (Rumack Decl. ¶ 29 & attached Exhibit C). Of the 158 class members, none objected to the settlement and only eight opted out (Rumack Decl. ¶¶ 32-33).

On January 3, 2018 plaintiffs filed the pending motion for final approval. Defendants do not oppose the motion.

III.  <u>Analysis</u>

   A.  Final Certification
       <u>of the Settlement Class</u>

In the Preliminary Approval Order, familiarity with which is assumed, I concluded that the Settlement Class satisfied the requirements of numerosity, commonality, typicality, adequacy, ascertainability and maintainability under Rule 23(a) and (b)(3), and preliminarily granted conditional certification of the Settlement Class, "consisting of all individuals who worked

for defendants as tipped employees, including 'servers, runners, bussers and bartenders,' between August 19, 2009 until September 1, 2017" (Preliminary Approval Order at 11-21).

To date, no facts have been presented to me to indicate that my preliminary determination was incorrect nor has any party claimed that my preliminary determination was erroneous. Thus, for the reasons stated in the Preliminary Approval Order, I conclude that final certification of the Settlement Class is proper.

B. Approval of
Settlement Agreement

Pursuant to Fed.R.Civ.P. 23(e), the settlement of a class action is not effective until judicially approved. Although there is a general policy favoring settlements, the court may approve a class action settlement only if it "is fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000). This requires consideration of both procedural and substantive fairness. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) ("A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading

to settlement."), citing D'Amato v. Deutsche Bank, 236 F.3d 78,
85 (2d Cir. 2001).

### 1. Procedural Fairness

In assessing procedural fairness, there is "a presump-
tion of fairness, reasonableness, and adequacy as to the settle-
ment where 'a class settlement [is] reached in arm's-length
negotiations between experienced, capable counsel after meaning-
ful discovery.'" McReynolds v. Richards-Cantave, 588 F.3d 790,
803 (2d Cir. 2009) (alteration in original), quoting Wal-Mart
Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 116.

"In addition, courts encourage early settlement of
class actions, when warranted, because early settlement allows
class members to recover without unnecessary delay and allows the
judicial system to focus resources elsewhere." Beckman v.
KeyBank, N.A., 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (Ellis, M.J.).

Here, the parties engaged in responsible, arm's-length
negotiations before and during a mediation session that lasted
several hours to reach an early settlement (Rumack Decl. ¶¶ 17-
20). The parties exchanged information and documents that
enabled both sides to assess plaintiffs' claims and calculate
potential damages (Rumack Decl. ¶¶ 15-16, 19). During the
mediation, the parties engaged in vigorous discussions regarding

10

their respective claims and defenses (Rumack Decl. ¶ 19). At the mediation, the parties reached an agreement on the settlement amount and several other key terms (Rumack Decl. ¶ 20). The parties memorialized all the terms of the settlement in a written, signed Settlement Agreement (Rumack Decl. ¶ 24).

Thus, I conclude that the settlement is procedurally fair pursuant to Rule 23(e).

2. <u>Substantive Fairness</u>

In assessing whether a settlement is substantively fair, the district court must consider the nine <u>Grinnell</u> factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

<u>McReynolds v. Richards-Cantave</u>, <u>supra</u>, 588 F.3d at 804, <u>quoting</u> <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir. 1974), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Goldberger v. Integrated Res., Inc.</u>, 209 F.3d 43 (2d Cir. 2000); <u>accord</u> <u>Charron v. Wiener</u>, 731

F.3d 241, 247 (2d Cir. 2013).  All the <u>Grinnell</u> factors weigh in favor of final approval.

The first <u>Grinnell</u> factor supports final approval because litigation through trial would be complex, expensive and long.  While extensive discovery has been conducted in this matter, additional discovery would be required, including depositions of all the parties (Pl. Memo. at 7).  "[P]reparation for trial would . . . seriously prolong the outcome of this suit in addition to consuming tremendous amounts of time, expenses and judicial resources."  <u>Sewell v. Bovis Lend Lease, Inc.</u>, 09 Civ. 6548 (RLE), 2012 WL 1320124 at *7 (S.D.N.Y. Apr. 16, 2012) (Ellis, M.J.).  Moreover, "[l]itigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action."  <u>Sewell v. Bovis Lend Lease, Inc.</u>, <u>supra</u>, 2012 WL 1320124 at *7.  Because the settlement offers appropriate monetary relief to the 158 class members in a prompt and efficient manner, the first <u>Grinnell</u> factor supports final approval.

The second <u>Grinnell</u> factor weighs in favor of final approval because the class's reaction to the settlement was very positive.  The notice informed class members of their rights under the settlement and all the material terms of the settlement.  No class member objected to the settlement and only

12

eight opted out (Rumack Decl. ¶¶ 32-33). This positive response to the settlement is evidence of its fairness. See Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (Chin, then D.J., now Cir. J.) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate."); see also Flores v. Anjost Corp., 11 Civ. 1531 (AT), 2014 WL 321831 at *5 (S.D.N.Y. Jan. 29, 2014) (Torres, D.J.) (approving settlement where no class member objected or opted out); Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 475 (concluding class reaction was positive where none objected and eight of 1,735 members opted out); Guaman v. Ajna-Bar NYC, 12 Civ. 2987 (DF), 2013 WL 445896 at *5 (S.D.N.Y. Feb. 5, 2013) (Freeman, M.J.) (finding fairness where there were no objections or requests for exclusion).

The third Grinnell factor also weighs in favor of final approval. When evaluating the level of discovery completed, "[t]he pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" Prasker v. Asia Five Eight LLC, 08 Civ. 5811 (MGC), 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010) (Cedarbaum, D.J.), quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004). Defendants produced approximately 2,000 pages of documents relating to the claims, including pay stubs, work

13

schedules and personnel files for the named plaintiffs and the opt-in plaintiffs (Rumack Decl. ¶ 16). Plaintiffs produced approximately 1,500 pages of documents, including tip sheets, pay stubs, work schedules, employee handbooks, dry cleaning receipts, disciplinary reports and tax forms (Rumack Decl. ¶ 15). Both parties were able to use and evaluate this information in order to assess the strengths and weakness of their cases and to evaluate potential damages properly.

The fourth and fifth <u>Grinnell</u> factors support final approval. "Litigation inherently involves risks," both in establishing liability and damages. <u>In re PaineWebber Ltd. P'ships Litig.</u>, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (Stein, D.J.), <u>aff'd sub nom.</u>, <u>In re Painewebber Inc. Ltd. P'ships Litig.</u>, 117 F.3d 721 (2d Cir. 1997) (<u>per curiam</u>); <u>see also In re Ira Haupt & Co.</u>, 304 F. Supp. 917, 934 (S.D.N.Y. 1969) (Motley, D.J.) ("If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."). Here, the claims and defenses are fact-intensive and present risks, including plaintiffs' potential inability to prove that Nello's retained a percentage of the gratuity fee charged to its banquet clients, and defendants' potential inability to rebut plaintiffs' evidence concerning unlawful deductions and

14

defendants' willfulness (Pl. Memo. at 9). Settlement eliminates these uncertainties.

The sixth <u>Grinnell</u> factor, the risk of maintaining collective and class certification throughout trial, also weighs in favor of final approval of the settlement. A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed.R.Civ.P. 23(f) or a motion to decertify by defendants, requiring additional briefing. "Settlement eliminates the risk, expense, and delay inherent in the litigation process." <u>Sukhnandan v. Royal Health Care of Long Island LLC</u>, 12 Civ. 4216 (RLE), 2014 WL 3778173 at *7 (S.D.N.Y. July 31, 2014) (Ellis, M.J.).

With respect to the seventh <u>Grinnell</u> factor, it is unclear whether defendants could pay a judgment greater than the settlement amount. However, "[e]ven if [defendants] could have withstood a greater judgment, a 'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" <u>Beckman v. KeyBank, N.A.</u>, <u>supra</u>, 293 F.R.D. at 476, <u>quoting</u> <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). Thus, the seventh factor is neutral and does not preclude final settlement approval.

The eighth and ninth <u>Grinnell</u> factors weigh in favor of final approval. "'[T]here is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" <u>Frank v. Eastman Kodak Co.</u>, <u>supra</u>, 228 F.R.D. at 186, <u>quoting</u> <u>Newman v. Stein</u>, 464 F.2d 689, 693 (2d Cir. 1972). Here, the $342,500.00 falls within the range of reasonableness. After deducting the service awards and attorneys' fees, class members will receive approximately 50% of their claimed misappropriated tips. In light of the risks of litigation, this recovery weighs in favor of approving the settlement.

Because all the relevant factors weigh in favor of settlement, I hereby grant the motion for final approval and unconditionally approve the settlement as set forth in the Settlement Agreement.

C.  Approval of the
    <u>FLSA Settlement</u>

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. <u>Cheeks v. Freeport Pancake</u>

House, Inc., 796 F.3d 199, 200 (2d Cir. 2015). However, settlement of a collective action does not implicate the same due process concerns as the settlement of a class action because, unlike in Rule 23 class actions, the failure to opt in to an FLSA collective action does not prevent a plaintiff from bringing suit at a later date. See Romero v. La Revise Assocs., L.L.C., 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (Gorenstein, M.J.); Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 476. Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement, and "satisfaction of the Grinnell factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." Henry v. Little Mint, Inc., 12 Civ. 3996 (CM), 2014 WL 2199427 at *7 (S.D.N.Y. May 23, 2014) (McMahon, D.J.); accord Hall v. ProSource Techs., LLC, No. 14-CV-2502 (SIL), 2016 WL 1555128 at *9 (E.D.N.Y. Apr. 11, 2016); Sierra v. Spring Scaffolding LLC, No. 12-cv-5160 (JMA), 2015 WL 10912856 at *4 (E.D.N.Y. Sept. 30, 2015).

Because the Grinnell factors weigh in favor of granting final approval to the settlement, necessarily the standard for approval under Cheeks is satisfied. Therefore, the FLSA settlement is approved.

D.  Dissemination
    of Notices to Class

Pursuant to the Preliminary Approval Order, Analytics
Consulting, Inc., the claims administrator, mailed notices (as
revised pursuant to the Preliminary Approval Order) to all class
members on October 17, 2017 (Rumack Decl. ¶ 29).  I conclude that
the notices fairly and adequately advised class members of the
terms of the settlement, as well as, the right of members of the
class to opt in to the collective action, to object to the
settlement and to appear at the fairness hearing that was held on
January 19, 2018.  Pursuant to Rule 23(c)(2)(B), class members
were provided with "the best notice that [was] practicable under
the circumstances."  Further, I conclude that the notices and the
process by which they were distributed comported with all
constitutional requirements, including those of due process.  I
confirm Analytics Consulting, Inc. as the claims administrator.

E.  Award of Fees
    to Class Counsel

The FLSA and NYLL each provide that a successful
plaintiff can recover his or her reasonable attorneys' fees and
costs.  See 29 U.S.C. § 216(b); N.Y. Labor L. §§ 198, 663(1).
Even where the plaintiff agrees to a settlement, counsel is still

entitled to his or her fees. Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (Holwell, D.J.).

An application for attorneys' fees must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). "Carey establishes what is essentially a hard-and-fast-rule 'from which attorneys may deviate only in the rarest of cases' . . . ." Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011) (per curiam), quoting Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (per curiam). Not even a District Judge's personal observations of an attorney's work can substitute for the required contemporaneous time records. Scott v. City of New York, supra, 643 F.3d at 58. The burden is on the attorney requesting fees to provide sufficient evidence, including production of contemporaneous time records or sufficient explanation for their absence. Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986), citing New York State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1148, 1154.

In addition, in order for me to make a determination as to the reasonableness of the award sought, plaintiffs must

19

provide sufficient information regarding the qualifications of the attorneys and the paralegals for whom fees are sought. <u>See</u>, <u>e.g.</u>, <u>Yea Kim v. 167 Nail Plaza, Inc.</u>, 05 Civ. 8560 (GBD)(GWG), 2009 WL 77876 at *9 (S.D.N.Y. Jan. 12, 2009) (Daniels, D.J.) (reducing attorney and paralegal rates where no information was provided to the court regarding their backgrounds); <u>Tlacoapa v. Carregal</u>, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (Robinson, D.J.) (reducing paralegal rate where limited information was provided regarding paralegals' qualifications and the nature of their work).

### 1. Attorneys' Fees Requested

Plaintiffs are represented by The Klein Law Group, P.C.[2] who represented plaintiffs without compensation under a contingent fee agreement. Class counsel seeks one-third of the $342,500.00 settlement fund, or $114,166.66, as attorneys' fees and is not requesting any reimbursement of litigation costs (Rumack Decl. ¶ 40). Plaintiffs' counsel contends that fees

---

[2]Plaintiffs were represented by Eli Z. Freedberg, Esq. when the action was commenced (Rumack Decl. ¶ 3). On May 4, 2016, the Klein Law Group P.C. substituted Mr. Freedberg as counsel of record for plaintiffs (Rumack Decl. ¶ 7). The Court endorsed this substitution (<u>see</u> Notice of Substitution of Counsel, dated Apr. 20, 2016 and so ordered by the Honorable Paul G. Gardephe May 10, 2016 (D.I. 39)).

should be calculated using the percentage method rather than the lodestar method.  There have been no objections to the attorneys' fees sought by counsel (Rumack Decl. ¶ 42).

Whether an attorneys' fee award is reasonable is within the discretion of the court.  Black v. Nunwood, Inc., 13 Civ. 7207 (GHW), 2015 WL 1958917 at *4 (S.D.N.Y. Apr. 30, 2015) (Woods, D.J.) (collecting cases).  In Goldberger v. Integrated Resources, Inc., supra, 209 F.3d at 52-53, the Second Circuit noted that, in common fund cases, "fixing a reasonable fee becomes even more difficult because the adversary system is typically diluted -- indeed, suspended -- during fee proceedings" since the defendants "have little interest in how [the fund] is distributed and thus no incentive to oppose the fee" and "class members -- the intended beneficiaries of the suit -- rarely object."  Thus, in common fund cases, the district court must assess a fee award "based on scrutiny of the unique circumstances of each case, and a jealous regard to the rights of those who are interested in the fund."  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 53 (internal quotation marks omitted).

"Although [the Second Circuit] ha[s] acknowledged that 'the trend in this Circuit is toward [awarding fees on] the percentage [of the fund] method,' it remains the law in this Circuit that courts 'may award attorneys' fees in common fund

cases under either the "lodestar" method or the "percentage of the fund" method.'" McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (collecting cases), quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 121. Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund. See McDaniel v. County of Schenectady, supra, 595 F.3d at 418. Under the lodestar method, the "lodestar" is calculated as the product of a reasonable hourly rate and the reasonable number of hours required by the case, creating a presumptively reasonable fee. Perez v. AC Roosevelt Food Corp., 744 F.3d 39, 44 (2d Cir. 2013) (Jacobs, Cir. J., dissenting). While "there is a 'strong presumption' that the lodestar figure is reasonable," it may be adjusted by a multiplier when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010).

"[N]either the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in common fund cases is without problems." McDaniel v. County of Schenectady, supra, 595 F.3d at 418-19 (describing the problems with and benefits of both methods). Ultimately, common fund fee awards must be "made with moderation" and the court must "act as a fiduciary who must serve

22

as a guardian of the rights of absent class members." <u>Goldberger</u>

<u>v. Integrated Res., Inc.</u>, <u>supra</u>, 209 F.3d at 52 (internal

quotation marks omitted; emphasis in original). Accordingly, in

this Circuit, both the lodestar and the percentage-of-the-fund

methods are

> guided by the traditional criteria in determining a
> reasonable common fund fee, including: (1) the time
> and labor expended by counsel; (2) the magnitude and
> complexities of the litigation; (3) the risk of the
> litigation . . .; (4) the quality of representation;
> (5) the requested fee in relation to the settlement;
> and (6) public policy considerations.

<u>Goldberger v. Integrated Res., Inc.</u>, <u>supra</u>, 209 F.3d at 50

(internal quotation marks omitted; alteration in original).

Where the percentage-of-the-fund method is used, the Second

Circuit "encourage[s] the practice of requiring documentation of

hours as a 'cross check' on the reasonableness of the requested

percentage." <u>Goldberger v. Integrated Res., Inc.</u>, <u>supra</u>, 209

F.3d at 50, <u>citing</u> <u>In re Gen. Motors Corp. Pick-Up Truck Fuel</u>

<u>Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 820 (3d Cir. 1995); <u>see</u>

<u>also</u> <u>Cassese v. Williams</u>, 503 F. App'x 55, 59 (2d Cir. 2012)

(summary order); <u>Masters v. Wilhelmina Model Agency, Inc.</u>, 473

F.3d 423, 436 (2d Cir. 2007).

I have previously cautioned against the percentage-of-

the-fund method, noting the need for a "robust judicial analysis"

of fee awards, <u>Long v. HSBC USA Inc.</u>, 14 Civ. 6233 (HBP), 2016 WL

4764939 at *4, *8 (S.D.N.Y. Sept. 13, 2016) (Pitman, M.J.); <u>Mills</u>
<u>v. Capital One, N.A.</u>, 14 Civ. 1937 (HBP), 2015 WL 5730008 at *9-
*10 (S.D.N.Y. Sept. 30, 2015) (Pitman, M.J.).  As the Honorable
William H. Pauley III, District Judge, recently explained in
<u>Sakiko Fujiwara v. Sushi Yasuda Ltd.</u>, 58 F. Supp. 3d 424, 436
(S.D.N.Y. 2014) (Pauley, D.J.), the key concern regarding fee
application analysis in FLSA settlements is the need for robust
judicial analysis, rather than the ultimate size of the award.
Therefore, consistent with my obligation to approach fee
applications with "a jealous regard to the rights of those who
are interested in the fund," <u>Goldberger v. Integrated Res., Inc.,</u>
<u>supra</u>, 209 F.3d at 53 (internal quotation marks omitted), I shall
apply the lodestar method here and then consider an appropriate
multiplier by applying the <u>Goldberger</u> criteria.

## 2.  The Lodestar

Plaintiffs' counsel has submitted contemporaneous time-
sheets documenting the hours spent on this action (The Klein Law
Group Invoice, annexed to Rumack Decl. as Exhibit E (D.I. 81-1)
("Invoice")).  Although the Invoice appears to be a computer
generated compilation of daily time records rather than the daily

24

time records themselves, it complies with the requirements in this Circuit for a fee application.[3]

According to the Invoice, plaintiffs' counsel and paralegal spent approximately 102.062 hours of attorney time, over a year and a half, to secure the settlement and reach the point of final approval (Invoice). Darren P.B. Rumack was lead counsel in this matter and performed the majority of the work on it; he spent a total of 97.902 hours working on the matter. Associate Xian-Ming Lei worked on the matter for 4.13 hours and two paralegals worked on it for 0.03 hours (Invoice). According to class counsel's memorandum, class counsel is seeking $400 an hour for Mr. Rumack's work, $300 an hour for Mr. Lei's work and does not seek any fee for the paralegals' work (Pl. Memo. at 19). Class counsel maintains it's entitled to $40,275.70 under the

---

[3]See, e.g., Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from their computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records"); Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 302-03 (S.D.N.Y. 1999) (Edelstein, D.J.) ("The actual original time sheets are not necessary; submitting an affidavit and attaching a computer printout of the pertinent contemporaneous time records is acceptable."); Lenihan v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (Conner, D.J.) ("The Court routinely receives computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers" as "a form convenient for the Court.").

25

lodestar analysis based on these rates and hours (Invoice).[4]

Class counsel further argues that because $114,166.66 is a

multiplier of 2.83 times this lodestar amount, it is reasonable

under the caselaw in this Circuit.

a.   Reasonable
     Hourly Rates

The hourly rates used in making a fee award should be

"what a reasonable, paying client would be willing to pay."

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

Albany, 522 F.3d 182, 184 (2d Cir. 2007).  This rate should be

"in line with those [rates] prevailing in the community for

similar services by lawyers of reasonably comparable skill,

experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895

n.11 (1984); accord Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d

224, 232 (2d Cir. 2006).  In determining reasonable hourly rates,

a court should first examine the attorneys' experience.  Kahlil

v. Original Old Homestead Rest., Inc., supra, 657 F. Supp. 2d at

475.  The court should not only consider the rates approved in

other cases in the District, but should also consider any

evidence offered by the parties.  Farbotko v. Clinton Cty., 433

_____

[4]Class counsel made an arithmetic error in its calculations.
97.902 hours multiplied by $400 equals $39,160.80 and 4.13
multiplied by $300 equals $1,239.00 for a total of $40,399.80.

F.3d 204, 208-09 (2d Cir. 2005). The Court is also free to rely on its own familiarity with prevailing rates in the District. A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 81 n.16 (2d Cir. 2005); Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

Mr. Rumack is a partner at Klein Law Group and has been practicing law for eleven years (Rumack Decl. ¶ 48-49). Mr. Rumack has significant FLSA experience in wage-and-hour collective cases, with a primary focus in the hospitality industry (Rumack Decl. ¶ 49-50). Since joining the Klein Law Group in 2010, Mr. Rumack served as the attorney of record in more than sixty wage-and-hour lawsuits (Rumack Decl. ¶ 50). Xian-Ming Lei, a seventh year associate at Klein Law Group, assisted Mr. Rumack in performing the damages calculations for 4.13 hours out of the total 102.032 of attorney time spent on the case (Rumack Decl. ¶ 54; Invoice).

Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced attorneys or partners in FLSA and NYLL wage-and-hour cases. See Greathouse v. JHS Security, Inc., 11 Civ. 7845 (PAE)(GWG), 2017 WL 4174811 at *4 (S.D.N.Y. Sept. 20, 2017) (Engelmayer, D.J.); Cortes v. New Creators, Inc., 15 Civ. 5680 (PAE), 2016 WL 3455383 at *7 (S.D.N.Y. Jun. 20, 2016) (Engelmayer, D.J.); Castellanos v. Mid Bronx Cmty. Hous. Mgmt.

Corp., 13 Civ. 3061 (JGK), 2014 WL 2624759 at *6 (S.D.N.Y. Jun.
10, 2014) (Koeltl, D.J.); Trinidad v. Pret a Manger (USA) Ltd.,
12 Civ. 6094 (PAE), 2014 WL 4670870 at *9 (S.D.N.Y. Sept. 19,
2014) (Engelmayer, D.J.). While several district courts in this
Circuit have denied Mr. Rumack this requested hourly rate under
the lodestar analysis,[5] those matters were FLSA default judgment
actions and did not involve the complexity of a collective or
class action. This distinction coupled with the fact that Mr.
Rumack has gained additional legal experience since those
matters, justifies the $400 hourly rate. However, $300 an hour
for Mr. Lei appears to be on the high end for a wage-and-hour and
general employment law associate. See Galeana v. Lemongrass on
Broadway Corp., 120 F. Supp. 3d 306, 324 (S.D.N.Y. 2014)
(Daniels, D.J.) (awarding $250 an hour to an associate with eight
years of experience handling FLSA claims); Jemine v. Dennis, 901
F. Supp. 2d 365, 384 (E.D.N.Y. 2012) (finding $250 to be

---

[5] See Leon v. Zita Chen, 16-cv-480 (KAM)(PK), 2017 WL
1184149 at *10 (E.D.N.Y. Mar. 29, 2017) (finding hourly rate of
$350 was reasonable given Mr. Rumack's experience; Li v. Leung,
15-cv-5262 (CBA)(VMS), 2016 WL 5369489 at *21 (E.D.N.Y. Jun. 10,
2016) (Report & Recommendation), adopted at, 2016 WL 5349770
(E.D.N.Y. Sept. 23, 2016) (reducing Mr. Rumack's requested hourly
fee of $350 to $250); Herrera v. Tri-State Kitchen and Bath,
Inc., 14-cv-1695 (ARR)(MDG), 2015 WL 1529653 at *14 (E.D.N.Y.
Mar. 31, 2015) (reducing Mr. Rumack's requested hourly fee of
$300 to $250); Garcia v. Badyna, 13-cv-4021 (RRM)(CLP), 2014 WL
4728287 at *16 (E.D.N.Y. Sept. 23, 2014) (holding hourly rate of
$300 was reasonable).

reasonable hourly rate for an associate with nine years
employment law experience).  Thus, a $250 hourly rate is more
appropriate for Mr. Lei.

        b.  Reasonable
           Number of Hours

     The party seeking attorneys' fees also bears the burden
of establishing that the number of hours for which compensation
is sought is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd.
of Elec. Workers, supra, 34 F.3d at 1160, citing Hensley v.
Eckerhart, 461 U.S. 424, 437 (1983); Wong v. Hunda Glass Corp.,
09 Civ. 4402 (RLE), 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1,
2010) (Ellis, M.J.).  Courts "should exclude . . . hours that
were not reasonably expended," such as where there is
overstaffing or the hours are "excessive, redundant, or otherwise
unnecessary."  Hensley v. Eckerhart, supra, 461 U.S. at 434
(internal quotation marks omitted).

     While 102.062 hours spent on this litigation is not on
its face unreasonable, I find that most of the work billed to Mr.
Rumack could have easily been performed by a more junior
associate.  These tasks included general correspondence regarding
scheduling and drafting and review of simple documents, such as
deposition notices and general class forms -- tasks commonly

regarded as associate-level work.  The Honorable Paul A. Engelmayer, United States District Judge, addressed this same issue in Zhang v. Lin Kumo Japanese Restaurant, Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.).  Upon "a close review" of the contemporaneous time records submitted by plaintiffs' counsel in that case, Judge Engelmayer also found that most of the work billed to the lead partner on the case easily could have been performed by junior associates. Zhang v. Lin Kumo Japanese Restaurant, Inc., supra, 2015 WL 5122530 at *2.  While Judge Engelmayer noted that the lead partner was "at liberty to decide how to use his time and manage his cases," it was not appropriate to bill every menial task in the litigation at a partner rate.  Zhang v. Lin Kumo Japanese Restaurant, Inc., supra, 2015 WL 5122530 at *2.  Therefore, Judge Engelmayer determined half of the billed hours should be reduced to an associate level rate and adjusted the lodestar amount accordingly.  Zhang v. Lin Kumo Japanese Restaurant, Inc., supra, 2015 WL 5122530 at *2.  I make the same determination here. Thus, 51.031 of class counsel's hours should be billed at $400 an hour and 51.031 of class counsel's hours should be billed at the associate rate of $250 an hour, yielding a total lodestar amount of $33,170.15.

3.  Application
    of a Multiplier


Under the lodestar method, as applied in common fund

cases, the Goldberger factors "indicate whether a multiplier

should be applied to the lodestar." McDaniel v. County of

Schenectady, supra, 595 F.3d at 423.  The proposed attorneys' fee

of $114,166.66 would represent a 3.44 multiplier of the adjusted

lodestar amount.  While plaintiffs' counsel is correct that

courts in this Circuit have awarded even high multipliers than

this, "there is little consensus in this district on the

appropriate range for lodestar multipliers."  Sakiko Fujiwara v.

Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 438; see also

Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 46 (no

error where the district court elected not to enhance lodestar

amount with a multiplier); Beckman v. KeyBank, N.A., supra, 293

F.R.D. at 481 (applying a multiplier of 6.3); Tiro v. Public

House Investments, LLC, 11 Civ. 7679 (CM), 2013 WL 4830949 at *15

(S.D.N.Y. Sept. 10, 2013) (McMahon, D.J.) (applying a multiplier

of 1.01); Silverstein v. AllianceBernstein, L.P., 09 Civ. 5904

(JPO), 2013 WL 7122612 at *9 (S.D.N.Y. Dec. 20, 2013) (Oetken,

D.J.) (applying no multiplier); Febus v. Guardian First Funding

Grp., LLC, supra, 870 F. Supp. 2d at 340 (applying a multiplier

of 2.2); Capsolas v. Pasta Res. Inc., 10 Civ. 5595 (RLE), 2012 WL

31

4760910 at *9 (S.D.N.Y. Oct. 5, 2012) (Ellis, M.J.) (applying a multiplier of 3.96); In re Merrill Lynch & Co. Research Report Sec. Litig., 02 Civ. 5097 (JFK), 2007 WL 4526593 at *21 (S.D.N.Y. Dec. 20, 2007) (Keenan, D.J.) (noting post Goldberger, most courts generally refuse to award multipliers higher than 2.03); Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (McMahon, D.J.) (applying a multiplier of 4.65). These vast discrepancies further show why "approval of class action . . . fee applications is precisely where judicial scrutiny, not judicial deference, is most needed." Sakiko Fujiwara v. Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 436 (discussing how district courts need to be especially vigilant when assessing the reasonableness of attorneys' fees in class actions).

The proposed attorneys' fee award of $114,166.66 would result in an effective hourly rate of over $1,100 an hour -- a rate commanded by very few attorneys in this district. At the same time, the fact that class counsel worked on contingency "clearly entitles [it] to some premium for the risk incurred." Sakiko Fujiwara v. Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 438-39. I conclude that a multiplier of 2 is appropriate to compensate for the risk associated with contingent fees in FLSA cases. Sakiko Fujiwara v. Sushi Yasuda Ltd., supra, 58 F. Supp.

32

3d at 439; <u>Mills v. Capital One, N.A.</u>, <u>supra</u>, 2015 WL 5730008 at

*13; <u>Trinidad v. Pret a Manger (USA) Ltd.</u>, <u>supra</u>, 2014 WL 4670870

at *12.

Thus, I find a multiplier of 2 to the modified lodestar

amount of $33,170.15, for a total award of $66,340.30, is

reasonable and appropriate based on the facts and circumstances

of this case and under the <u>Goldberger</u> factors set forth below.

a.  Counsel's
   <u>Time and Labor</u>

Plaintiffs' counsel reasonably expended approximately

102.062 attorney hours over a year and a half to secure the

settlement and to reach the point of final approval (Invoice).

During that time, plaintiffs' counsel interviewed the named and

opt-in plaintiffs, filed an Amended Complaint, conducted formal

discovery, reviewed documents, drafted several interrogatories,

conducted damages calculations, represented plaintiffs at a

mediation and successfully negotiated a settlement with

defendants (Rumack Decl. ¶ 12, 15-16, 19).  Plaintiffs' counsel

will also spend additional hours to administer the settlement

(Rumack Decl. ¶ 42).

b.  The Litigation's
    Magnitude and Complexity

This case is larger and more complex than the typical
FLSA collective action.  "Among FLSA cases, the most complex type
is the 'hybrid' action brought here, where state wage and hour
violations are brought as an 'opt out' class action pursuant to
Rule 23 in the same action as the FLSA 'opt in' collective action
pursuant to 29 U.S.C. § 216(b)."  Siler v. Landry's Seafood
House-North Carolina, Inc., 13 Civ. 587 (RLE), 2014 WL 2945796 at
*9 (S.D.N.Y. June 30, 2014) (Ellis, M.J.); see also Henry v.
Little Mint, Inc., supra, 2014 WL 2199427 at *13.  Here, the FLSA
settlement resolves the claims of 158 class members (Rumack Decl.
¶ 21).  The settlement negotiated by counsel takes into account
the various circumstances presented.  See Sukhnandan v. Royal
Health Care of Long Island LLC, supra, 2014 WL 3778173 at *10
("The size and difficulty of the issues in a case are significant
factors to be considered in making a fee award.").  Therefore,
this factor also favors a multiplier.

c.  The Risk
    of Litigation

As discussed above, plaintiffs' counsel faced risk
because it represented plaintiffs on a contingent basis and has

34

not received a fee for its work since the commencement of this action (Rumack Decl. ¶ 44). "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." Febus v. Guardian First Funding Grp., LLC, supra, 870 F. Supp. 2d at 340 (internal quotation marks omitted); accord Henry v. Little Mint, Inc., supra, 2014 WL 2199427 at *14. "Risk falls along a spectrum, and should be accounted for accordingly." Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 54. In addition, victory in a contested suit would have been far from clear because the primary source of proof is the plaintiffs' own self-serving testimony and defendants were contesting liquidated damages (Pl. Memo. at 15). Accordingly, the third Goldberger criteria also supports the multiplier.

> d. The Quality
> of Representation

The quality of class counsel and their representation of plaintiffs also supports the multiplier. "To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." Taft v. Ackermans, 02 Civ. 7951 (PKL), 2007 WL 414493 at *10 (S.D.N.Y. Jan. 31, 2007) (Leisure, D.J.);

see also Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D.
193, 200 (S.D.N.Y. 2011) (Sand, D.J.) ("There is no dispute that
Plaintiffs' counsel are qualified and experienced in class action
law and wage and employment litigation in New York."). Mr.
Rumack and Mr. Lei both have extensive experience in FLSA wage-
and-hour disputes. Their work on plaintiffs' behalf, aided by
their experience, ultimately aided plaintiffs in the progress of
the litigation and in reaching a fair settlement.

e. Relationship of
   the Fees to the Settlement

Under Goldberger, "[c]ourts consider the size of a
settlement to ensure that the [fees] awarded do[] not constitute
a windfall." Sukhnandan v. Royal Health Care of Long Island LLC,
supra, 2014 WL 3778173 at *13. "Courts in this District have
declined to award more than one third of the net settlement
amount as attorneys' fees except in extraordinary circumstances."
Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL
9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.), citing
Zhang v. Lin Kumo Japanese Rest. Inc., supra, 2015 WL 5122530 at
*4 and Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL
1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v.
639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL

5308277 at *1 (E.D.N.Y. Sept. 19, 2013); <u>Febus v. Guardian First</u>
<u>Funding Grp., LLC</u>, <u>supra</u>, 870 F. Supp. 2d at 340. Here, the
adjusted attorneys' fee of $66,340.30 is 19.3% of the total
settlement amount, less than one-third, and does not constitute a
windfall.

   f. Public Policy
     <u>Considerations</u>

  Finally, "[w]hen determining whether a fee award is
reasonable, courts consider the social and economic value of the
class action, 'and the need to encourage experienced and able
counsel to undertake such litigation.'" <u>Siler v. Landry's</u>
<u>Seafood House-North Carolina, Inc.</u>, <u>supra</u>, 2014 WL 2945796 at
*11, <u>quoting</u> <u>In re Sumitomo Copper Litig.</u>, 74 F. Supp. 2d 393,
399 (S.D.N.Y. 1999) (Pollack, D.J.). "Adequate compensation for
attorneys who protect wage and hour rights furthers the remedial
purposes of the FLSA and [state wage and hour laws]." <u>Henry v.</u>
<u>Little Mint, Inc.</u>, <u>supra</u>, 2014 WL 2199427 at *15 (alteration in
original), <u>citing</u> <u>Willix v. Healthfirst, Inc.</u>, No. 07 Civ. 1143
(ENV)(RER), 2011 WL 754862 at *6 (E.D.N.Y. Feb. 18, 2011).
However, these public policies must be balanced against the need
to award fees "with an eye to moderation," particularly where the
fee application is unopposed and there is little incentive for

plaintiffs to object when the impact on their individual potential recovery of any increase or decrease in the fee award is incremental. Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 53 (internal quotation marks omitted).

Here, a multiplier of 2 addresses all of the aforementioned public policy concerns. Reducing the original requested multiplier by 1.44 keeps the total attorneys' fee moderate, avoids a fee award based on an effective hourly rate in excess of $1,100 and allows class members to now recover approximately 69% of their misappropriated tips instead of 50%. On the other hand, applying a multiplier of 2 instead of awarding only the lodestar amount, properly compensates plaintiffs' counsel for the risks associated with contingency fees and encourages experienced counsel to undertake such litigation to further the rights of unpaid workers who may never have realized they had claims, if not for the collective action.

Thus, public policy supports the multiplier of 2 to the modified lodestar amount.

F.   Named
     Plaintiffs' Service Awards

Plaintiffs also request that Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis Lopez each receive a service award of $8,500.00 (Rumack Decl. ¶ 35).   Service awards, also called enhancement or incentive awards, are common in class actions.   They "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."   Parker v. Jekyll & Hyde Entm't Holdings, L.L.C., 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960 at *1 (S.D.N.Y. Feb. 9, 2010) (Francis, M.J.); accord Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 483.

Here, Surdu, Tito, Mayfat, Grosu and Lopez initiated this action and assisted counsel's investigation and prosecution of the claims by providing factual information, producing documents, reviewing defendants' document production and assisting with preparation for the mediation (Rumack Decl. ¶ 36). Plaintiffs also maintain the five named plaintiffs took on the risk that they would be "black balled" in the restaurant and hospitality industry where they worked by prosecuting this litigation (Rumack Decl. ¶ 37).

The total $42,500.00 service award represents approximately 12.4% of the $342,500.00 settlement fund.   Although

39

this percentage is on the higher end of service awards, courts have granted similar incentive payment amounts in past FLSA collective actions to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained." Yuzary v. HSBC Bank USA, N.A., 12 Civ. 3693 (PGG), 2013 WL 5492998 at *12 (S.D.N.Y. Oct. 2, 2013) (Gardephe, D.J.) (service award of $10,000); see also Henry v. Little Mint, Inc., supra, 2014 WL 2199427 at *4 (service award of $10,000); Flores v. Anjost Corp., supra, 2014 WL 321831 at *9-*10 (service award of $25,000); Sewell v. Bovis Lend Lease, Inc., supra, 2012 WL 1320124 at *14-15 (service award of $15,000); Johnson v. Brennan, 10 Civ. 4712 (CM), 2011 WL 4357376 at *2, *21 (S.D.N.Y. Sept. 16, 2011) (McMahon, D.J.) (service award of $10,000).

Accordingly, I grant the requested service award.

G. Administrator Fees

Pursuant to the Settlement Agreement, plaintiff retained Analytics Consulting, LLC. as the claims administrator. No class member objected to the fee as detailed in the notice (Rumack Decl. ¶ 30, 32). The fee sought by the claims administrator of $5,588.23 is reasonable and is approved.

IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' motions are granted as follows:

1.  Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), the following class is certified for settlement purposes: all individuals who worked for defendants as "tipped employees," including "servers, runners, bussers and bartenders," between August 19, 2009 until September 1, 2017.

2.  The Settlement Agreement is unconditionally approved.

3.  The "Effective Date" of the settlement shall be the date thirty days after entry of this Final Approval Order approving the Settlement Agreement, if no appeal is filed.  If an appeal is taken, the "Effective Date" shall be the next business day after all appeals are finally resolved in favor of final approval.

4.   In accordance with the terms of the Settlement Agreement and after the Effective Date of this Order, the claims administrator shall distribute the funds in the settlement amount by making the following payments:

- Paying the claims administrator fee of $5,588.23;
- Paying $66,340.30 to class counsel as payment of attorneys' fees; and
- Paying a service award of $8,500.00 to Alexandru Surdu, Dino Tito, Anastasia Mayfat, Ciprian Grosu and Luis Lopez.

5.   Following the disbursement set forth above, the claims administrator shall distribute the remaining funds in the settlement account to collective and class members in accordance with the allocation plan described in the Settlement Agreement.

6.   I shall retain jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated by reference herein, and this Order.

7.   This litigation shall be dismissed with prejudice on April 23, 2018.

8.   The Clerk of the Court is respectfully requested to close Docket Item 79.

Dated:   New York, New York
         March 23, 2018

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

All Counsel of Record